# Milbank

**GURBIR S. GREWAL**
*Partner*
55 Hudson Yards  |  New York, NY 100001-2163
T: +1 (212) 530-5770
ggrewal@milbank.com  |  milbank.com

August 28, 2025

<u>Via ECF</u>

The Honorable Evelyn Padin, U.S.D.J.
United States District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

      **Re:** *United States of America v. City of Newark*, No. 2:25-cv-5081

      Pursuant to Section II.E.i of the Court's Rules, City of Newark, Newark City Council, C. Lawrence Crump, Ras J. Baraka, City of Hoboken, Hoboken City Council, James Doyle, and Ravinder S. Bhalla (Defendants) request a pre-motion conference before moving to dismiss this suit under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

      This lawsuit involves a challenge to Defendants' policies limiting when local officials can voluntarily cooperate with federal immigration authorities.[1]  Plaintiffs allege that these policies violate the Supremacy Clause of the United States Constitution because they are preempted by federal law, and that the policies impermissibly discriminate against and unlawfully regulate the federal government.  Dkt. No. 1 ¶¶ 82-95 (Compl.).

      This case should be promptly disposed of through a motion to dismiss.  Plaintiffs lack standing because a New Jersey Attorney General Directive requires Defendants to adhere to the same policies Plaintiffs challenge here, meaning that Plaintiffs cannot show that their injuries are traceable to Defendants' (rather than New Jersey's) policies or redressable by this case.  Plaintiffs cannot overcome this obstacle by suing New Jersey because the United States already brought such a suit and lost, precluding any further litigation on the issue.  *United States v. New Jersey*, No. 20-1364, 2021 WL 252270 (D.N.J. Jan. 26, 2021).  Prior litigation also forecloses Plaintiffs' primary claim on the merits.  In *Ocean Cnty. Bd. of Commissioners v. Att'y Gen. of State of New Jersey*, 8 F.4th 176 (3d Cir. 2021), the Third Circuit upheld the almost identical New Jersey state directive against an identical preemption challenge.  *Id.* at 181-182.  That decision is binding and requires rejection of Plaintiffs' preemption claims.  Moreover, every other decision to address the issue—including, most recently, *United States v. Illinois*, No. 25 CV 1285, 2025 WL 2098688 (N.D. Ill. July 25, 2025)—has similarly rejected Plaintiffs' preemption arguments, recognizing that local officials may decide for themselves how much assistance to provide to federal immigration authorities.  Courts have also consistently rejected the assertion that policies like these discriminate against, or impermissibly regulate, the federal government.  *See, e.g.*, *id.* at *25-27.  The only reason these policies focus exclusively on local officials' interactions with the federal government is that "only the federal government enforces civil immigration law," *id.* at *25, and

---

[1] The lawsuit also challenges policies promulgated by Paterson and Jersey City.  Defendants join the arguments in the pre-motion letters submitted by the Paterson and Jersey City defendants.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

the policies "directly regulate" local officials, not federal actors, *id.* at *26. Plaintiffs' claims therefore fail many times over.

1. Begin with standing. Although Plaintiffs complain about Defendants' policies, a 2018 statewide directive from the New Jersey Attorney General already prohibits local officials from extending the same voluntary cooperation to federal immigration authorities. *See* Immigrant Trust Directive, NJ AG Directive 2018-6 (2019).[2] For example, the Directive prohibits local officials from "[p]articipating in civil immigration enforcement operations," "[p]roviding any non-public personally identifying information regarding any individual," "[p]roviding notice of a detained individual's upcoming release from custody," and entering § 287(g) cooperation agreements unless required by law. *Id.* at 3-6; *compare* Compl. ¶¶ 40-65.

Because Defendants are bound to adhere to this NJ AG Directive regardless of their local policies, Plaintiffs cannot show that their injury is "fairly traceable" to Defendants' policies or is "likely" to "be redressed by a favorable decision" of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks and citation omitted). Nor can Plaintiffs avoid this fundamental defect in their Article III standing by suing New Jersey to invalidate the State's Directive because the United States already brought such a challenge and lost. In *New Jersey*, 2021 WL 252270, the District Court dismissed a suit by the federal government alleging that the NJ AG Directive was preempted or otherwise unlawful. The United States did not appeal that final judgment, and basic principles of collateral estoppel now bar them from relitigating their claims against the State. Plaintiffs therefore do not have standing to bring this suit.

2. Plaintiffs also cannot succeed on the merits. Plaintiffs first contend that 8 U.S.C. §§ 1373(a) and 1644 preempt Defendants' policies, Compl. ¶ 84, but the Third Circuit already rejected that argument in *Ocean County*, another case challenging New Jersey's parallel Directive. As here, plaintiffs in *Ocean County* claimed §§ 1373(a) and 1644 prohibit local authorities from restricting the communication of "immigration information to the federal government" and making immigration enforcement more difficult. 8 F.4th at 181-182. But the Third Circuit held that those provisions "cannot serve as a basis for preemption" because they prohibit "*state* action"—something federal law may not do because " 'the Constitution confers upon Congress the power to regulate individuals, not States.' " *Id.* at 181-182 (quoting *Murphy v. N.C.A.A.*, 584 U.S. 453, 455 (2018)). That holding resolves this case.

Even setting aside *Ocean County*, Plaintiffs' preemption claims would fail because Sections 1373(a) and 1644 do not actually conflict with Defendants' policies. Express preemption occurs "when there is an explicit statutory command that state law be displaced." *St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 238 (3d. Cir. 2000). There is no such command here. Sections 1373(a) and 1644 restrict prohibitions on sharing information "regarding" a person's "citizenship or immigration status." Defendants' policies, by contrast, prohibit sharing "confidential personal information" like "contact information" and "release date from incarceration." Compl. ¶ 43; *see also id.* ¶¶ 47, 62, 64 (similar). Sections 1373(a) and 1644 thus do not "speak to the information covered by the Sanctuary Policies." *Illinois*, 2025 WL 2098688, at *10. And the policies have savings clauses that require local officials to share information with federal officials when they are "required" to do so by "federal law," further undermining any claim of express preemption. Compl. ¶¶ 43, 64.

---

[2] *Available at* https://www.nj.gov/oag/dcj/agguide/directives/ag-directive-2018-6_v2.pdf.

Plaintiffs' conflict preemption allegations are equally infirm. State law is conflict preempted when it "stand[s] as an obstacle to the accomplishment and execution" of federal law. *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quotation marks and citation omitted). But Defendants' policies do not interfere with the federal government's duties, they merely limit the voluntary assistance that local officials can provide. "[R]efusing to help is not the same as impeding." *Illinois*, 2025 WL 2098688, at *23 (quoting *United States v. California*, 921 F.3d 865, 888 (9th Cir. 2019)).

Indeed, Plaintiffs' contention that federal law somehow requires state and local authorities to help the federal government in carrying out federal immigration policy is at odds with the anti-commandeering principle embodied in the Tenth Amendment. As the Supreme Court has explained, the federal government may not compel States and localities to help "administer a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 926 (1997). Thus, if Sections 1373(a), 1644, or any other provision of federal law could be read to mandate the assistance Plaintiffs contemplate, that law would not be preemptive, it would be unconstitutional. *See California*, 921 F.3d at 888; *Illinois*, 2025 WL 2098688, at *23-25.

3. Plaintiffs' claims that Defendants' policies discriminate against and unlawfully regulate the federal government fare no better. Plaintiffs allege that Defendants' policies "single out federal officials" for unfavorable treatment. Compl. ¶ 88. But a state law is discriminatory only if it "treats similarly situated state and federal [actors] differently." *Dawson v. Steager*, 586 U.S. 171, 177 (2019). There are no similarly situated actors here because federal officials are the only ones who enforce immigration laws, and "the mere fact that the [state law] touches on an exclusively federal sphere is not enough to establish discrimination." *Illinois*, 2025 WL 2098688, at *25 (citation omitted). As for regulation, the test is "whether the state law directly regulates the federal government." *Id.* at *26. Defendants' policies do not impose any requirements on the federal government; they "regulate[ ] only state and local law enforcement agencies." *New Jersey*, 2021 WL 252270, at *13.

\*\*\*

In short, Plaintiffs cannot succeed in this suit. And it is critical to Defendants to dispose of this challenge expeditiously to maintain public safety and to protect the delicate trust Defendants' have built with their communities. That trust is essential. Studies (and common sense) confirm that immigrants are less likely to report a crime, testify as a witness, or otherwise engage in vital interactions with local authorities if they fear that the police will turn them over to immigration authorities. *See, e.g.*, *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 363 n.5 (D.N.J. 2020), *aff'd sub nom. Ocean Cnty.*, 8 F.4th 176. Because the federal government has no basis for displacing policies that represent Defendants' reasoned judgment about how best to govern and protect their constituents, the Court should grant the request for a pre-motion conference and ultimately dismiss this case under either Rule 12(b)(1) or 12(b)(6). [3]

Respectfully submitted,

*/s/ Gurbir S. Grewal*
Gurbir S. Grewal

cc:   All counsel of record via ECF

---

[3] Defendants reserve their right to assert additional arguments in their motion to dismiss.