**U.S. Department of Justice**
*Civil Division*

*Washington, D.C. 20044*

VIA ECF September 4, 2025

Hon. Evelyn Padin, United States District Judge
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

**Re: *United States of America v. City of Newark*, No. 2:25-cv-5081 (D.N.J.)**

Dear Judge Padin,

Plaintiff United States of America submits this Response to Defendants' pre-motion conference requests in which they identified their anticipated bases for moving to dismiss the instant lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF Nos. 26, 28-29.

This lawsuit challenges policies issued by Newark, Jersey City, Paterson, and Hoboken that deny federal immigration agents access to illegal aliens in local custody, restrict local officers' ability to hand over illegal aliens to federal agents, and bar otherwise willing local officers from providing mission-critical information to federal immigration authorities, all in violation of the Constitution's Supremacy Clause. Defendants seek to dismiss the lawsuit, claiming that Plaintiff cannot establish standing or valid preemption claims. The Court should deny Defendants' motions for the following reasons, which Plaintiff will further develop in briefing.

First, Defendants challenge Plaintiff's standing to sue, suggesting that Plaintiff cannot show its injuries are "traceable to Defendants' (rather than New Jersey's) policies…" ECF No. 26 at 1. Defendants thus claim that Plaintiff cannot establish redressability because Defendants' policies "merely reflect" the statewide Immigrant Trust Directive ("ITD") that the Complaint does not challenge. ECF No. 29 at 2. But Defendants' policies are *not* perfectly reflected in the statewide ITD; Defendants' policies, in fact, impose even greater restrictions than the ITD on the federal government's ability to enforce this nation's immigration laws. The Newark policy, for example, precludes "any contract, agreement, or arrangement to detain immigrants in deportation proceedings, including but not limited to Intergovernmental Service Agreements." Newark Exec. Order MEO 17-0001 § 2(A); Compl. ¶ 41. By comparison, the ITD does not prohibit municipal agreements to detain illegal aliens. In fact, an entirely separate New Jersey statute purported to prohibit state, local, and private agencies from operating immigration detention centers. *See* N.J.S.A. § 30:4-8.16. That statute has been struck down for violating the Supremacy Clause and the principle of intergovernmental immunity. *See CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 319 (3d Cir. 2025). As another example, Hoboken prohibits the honoring of any and all detainer requests. Hoboken Exec. Order (Jan. 1, 2008) ¶ 3(C); Compl. ¶ 62. Unlike the ITD,

September 4, 2025
Page 2

Hoboken's policy makes no exceptions for detainers issued against dangerous individuals, such as those convicted of violent or serious offenses. *Contrast id. with* ITD § II(B)(6).

The United States has thus suffered a concrete injury traceable to Defendants' sanctuary city policies because each of them directly interferes with the federal government's legally protected interest in enforcing federal law. *See United States v. Missouri*, 114 F.4th 980, 985 (8th Cir. 2024) ("Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States."). And this lawsuit challenges Defendants' individual policies, which either exceed the statewide ITD or mirror it, demonstrating that the cities themselves are directly and independently responsible for issuance and implementation of the policies. *See Loggerhead Turtle v. County Council of Volusia County*, 148 F.3d 1231, 1247 (11th Cir. 1998) ("[S]tanding is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties."). Thus, even if Plaintiff does not challenge the ITD, by challenging Defendants' policies, Plaintiff has established the requisite redressability. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) ("[T]he ability to effectuate a partial remedy satisfies the redressability requirement.") (internal quotation marks and citation omitted)); *Falcone v. Dickstein*, 92 F.4th 193, 204 (3d Cir. 2024) ("The remedy he seeks need not be complete or relieve every injury alleged to satisfy Article III standing."), *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560 (2024).

Second, as to the merits of the preemption claims, Plaintiff will establish that Defendants' challenged policies are conflict preempted because they pose "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," specifically, the operation of the immigration laws. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). To ensure the successful implementation of those laws, Congress anticipated coordination between federal, state, and local officials. *See, e.g.*, 8 U.S.C. §§ 1373(a), 1373(b), 1644, 1357(g)(10); *see also City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) ("A system of dual sovereignties cannot work without informed, extensive, and cooperative interaction of a voluntary nature between sovereign systems"). The challenged policies conflict not only with 8 U.S.C. §§ 1373 and 1644 but with the entire "extensive and complex" statutory scheme for the "governance of immigration and alien status," that regulates individual aliens present in the United States. *Arizona v. United States*, 567 U.S. 387, 395 (2012).

Moreover, Defendants' challenged policies unlawfully discriminate against the federal government by singling out federal immigration enforcement entities, such as Immigration and Customs Enforcement ("ICE"), for unfavorable treatment. Defendants argue that they cannot discriminate against the federal government because "[t]here are no similarly situated actors here because federal officials are the only ones who enforce immigration laws." ECF No. 26 at 3. But Paterson's policy notably does not apply to members assigned to a federal "joint law enforcement taskforce," indicating that Paterson police are not prohibited from sharing information regarding immigration status with agencies other than ICE or CBP or from allowing access to detainees to other law enforcement agencies. Paterson Police Dept. Standard Op. Procedures vol. 4, ch. 13 § III(C)(4). These provisions, on their face, treat ICE less favorably than other law enforcement agencies and discriminatorily burden the United States in carrying out its immigration enforcement functions. *See North Dakota v. United States*, 495 U.S. 423, 438 (1990).

September 4, 2025
Page 3

Defendants contend their challenged policies are needed to maintain public safety, ECF No. 26 at 3, ECF No. 28 at 2. But Defendants cannot save their policies from preemption on that basis because the Supreme Court has rejected the contention "that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration," because "such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply … articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law." *Perez v. Campbell*, 402 U.S. 637, 651–52 (1971). Defendants' policies, "which frustrate[] the full effectiveness of federal law [are] rendered invalid by the Supremacy Clause." *Perez*, 402 U.S. at 652.

Previous litigation does not preclude this lawsuit given the differences in the instant challenge. The Third Circuit previously rejected a claim that 8 U.S.C. §§ 1373 and 1644 conflict preempted the state of New Jersey's ITD policy. *Ocean County Bd. of Comm'rs v. Att'y Gen.*, 8 F.4th 176, 181–82 (3d Cir. 2021). But as noted above, the Complaint in this action alleges that Defendants' policies conflict not merely with § 1373 and § 1644 but with the entire "extensive and complex" statutory scheme for the "governance of immigration and alien status," that regulates individual aliens present in the United States. *Arizona*, 567 U.S. at 395; Compl. ¶¶ 30-37, 83. Because the *Ocean County* court limited its analysis of conflict preemption to only §§ 1373 and 1644, *see Ocean County*, 8 F.4th at 182, that decision has no relevance to the broader conflict preemption claim raised in this action.

To the extent that *Ocean County* did hold that § 1373 and § 1644 had no express preclusive effect, *see* 8 F.4th at 181-82, the current crisis of illegal immigration, which was allowed to reach critical levels after *Ocean County* was decided, requires a re-examination of that ruling so that the law in this circuit accords with the holding of *City of New York* and *State of New York v. Department of Justice*, 951 F.3d 84 (2d Cir. 2020). Those decisions correctly held that §§ 1373 and 1644 are valid preemption provisions. In *City of New York*, the Second Circuit recognized that "[a]bsent any cooperation at all from local officials," the immigration system—like other federal programs—"may fail or fall short of [its] goals[.]" *City of New York*, 179 F.3d at 35. The Second Circuit proceeded to reject New York City's facial challenge to §§ 1373 and 1644, finding instead that they were valid preemption provisions and holding that they preempted New York City's Executive Order 124, which restricted City employees' ability to "transmit information respecting any alien to federal immigration authorities." *Id.* at 36–37. The Second Circuit rejected the City's Tenth Amendment challenge to those provisions because "the City's sovereignty argument asks us to turn the Tenth Amendment's shield against the federal government's using state and local governments to enact and administer federal programs into a sword allowing states and localities to engage in passive resistance that frustrates federal programs." *Id.* at 35. In *State of New York*, the Second Circuit held that "it is doubtful that States have reserved the power to adopt … immigration policies *contrary* to those preferred by the federal government" and set forth in statutes such as § 1373. *Id.* at 113 (internal quotations and citation omitted). In light of *City of New York* and *State of New York*, this lawsuit provides the vehicle to reverse *Ocean County's* incorrect holding that failed to acknowledge the preclusive effect of §§ 1373 and 1644.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

JOHN J.W. INKELES
Chief
Affirmative Litigation Unit

*/s/ Hans H. Chen*
HANS H. CHEN
Deputy Chief, Affirmative Litigation Unit
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878
Washington DC 20044
(202) 305-0190
hans.h.chen@usdoj.gov

AYSHA T. IQBAL
Trial Attorney

Attorneys for Plaintiff
United States of America