# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

CITY OF NEWARK *et al.*,

    *Defendants.*

Hon. Evelyn Padin, U.S.D.J.
Hon. Andre M. Espinosa, U.S.M.J

Docket No. 2:25-cv-5081
Civil Action

**Motion Date: October 14, 2025**

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## PURSUNAT TO FED. R. CIV. PRO. 12(b)(6)

---

AYMEN ABOUSHI
Corporation Counsel
OWEN T. CAMPBELL
Assistant Corporation Counsel
CITY OF PATERSON
155 Market St., 2nd Floor
Paterson NJ 07505
aaboushi@patersonnj.gov
ocmapbell@patersonnj.gov


**Attorneys for defendants,**
**City of Paterson, Paterson City Council,**
**Alex Mendez, Paterson City Council President,**
**and André Sayegh, Mayor of Paterson**

## TABLES OF CONTENTS

**Preliminary Statement** ................................................................................................ 1

**Policies Challenged** .................................................................................................... 3

**Legal Standard** .......................................................................................................... 5

**ARGUMENT** ............................................................................................................ 6

**I.** The United States Lacks Standing Under Article III of the United States Constitution ........... 6

    A. Plaintiff Has Not Established an Injury in Fact ................................................. 7

    B. Plaintiff Cannot Demonstrate Traceability ...................................................... 8

    C. Plaintiff Cannot Demonstrate Redressability .................................................. 9

**II.** Count I Fails as a Matter of Law Because the City's Policy Is Not Preempted ..................... 11

    A. Express Preemption Does Not Apply ............................................................. 11

    B. There Is No Conflict Preemption .................................................................... 12

    C. Sections 1373 and 1644 Cannot Be Read to Require Information Sharing Without Violating the Constitution ................................................................................................ 13

**III.** Count II Fails as a Matter of Law Because the City's Policy Does Not Discriminate Against the Federal Government .................................................................................................. 14

    A. The City's Policy Does Not "Regulate" the Federal Government and Is Not Discriminatory ................................................................................................................. 15

    B. Refusal to Assist Federal Immigration Enforcement Is Not Discrimination ....................... 16

**IV.** Count III Fails as a Matter of Law Because the City's Policy Does Not Regulate the Federal Government ................................................................................................................. 18

    A. Supreme Court Precedent Establishes That State and Local Laws Are Not Automatically

Preempted Merely Because They Touch Immigration ..................................................... 18

B. Local Refusal to Honor Immigration Detainers Is Lawful and Not Federally Mandated ... 19

C. The City's Policy Does Not Interfere with the Federal Government's Immigration Powers

.................................................................................................................................................. 20

**V.** The Federal Government's Demands Violate the Anti-Commandeering Doctrine .............. 21

A. The Anti-Commandeering Doctrine Prohibits Federal Compulsion of State or Local

Governments ......................................................................................................................... 22

**VI.** The City's Policy Is a Lawful Exercise of Local Police Power ............................................ 23

A. Local Governments Retain Authority Over Their Law-Enforcement Operations .............. 23

B. Third-Circuit Precedent Confirms the Validity of Non-Cooperation Policies .................... 23

**VII.** Plaintiff's Claim Fails Because the City Does Not Collect the Requested Information ..... 23

**Conclusion** ................................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387 (2012) .......................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 5

*City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018) .................................... 20, 21

*City of Chicago v. Sessions of the U.S.*, 916 F.3d 276 (3d Cir. 2019)..................... 14,22

*City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289 (E.D. Pa. 2018)........................ 2

*City of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018)................................... 7

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ....................................................... 7

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) .................................... 5

*County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), aff'd, 8 F.4th 176 (3d Cir. 2021)
.................................................................................................................. passim

*Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010).................................................... 13

*Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014) .................................................. 20

*GEO Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) .................................... 15, 18

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ................................................................ 12

*Kansas v. Garcia*, 589 U.S. 82 (2020) ............................................................... 18,19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................. 1, 7

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) ........................................ 15

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ................................... 11

*Murphy v. NCAA*, 584 U.S. 453 (2018) ........................................................... passim

*North Dakota v. United States*, 495 U.S. 423 (1990) ............................................. 15

*Ocean County Board of Commissioners v. Attorney General of New Jersey*, 8 F.4th 176 (3d Cir. 2021) ...................................................................................................... 9, 13

*Printz v. United States*, 521 U.S. 898 (1997)................................................. passim

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ............................................................. 8

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................................................................... 8

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ........................................................ 17

*United States v. Texas*, 599 U.S. 670 (2023) ................................................................................ 8

*United States v. Washington*, 596 U.S. 832 (2022) .............................................................. 15, 18

*United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010) ............................................. 15, 16

## Statutes and Constitutional Provisions

8 U.S.C. § 1373 .................................................................................................................. passim

8 U.S.C. § 1644 ................................................................................................................. passim

U.S. Const. art. III ........................................................................................................... passim

U.S. Const. amend. X ...................................................................................................... passim

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3, 6

## PRELIMINARY STATEMENT

The federal government's lawsuit attempts to cast the City of Paterson's prudent decision to limit its participation in federal immigration enforcement as an act of rebellion; an imagined effort to shield undocumented individuals or frustrate federal authority. That narrative is not only wrong on the facts but untenable under the Constitution. Paterson's policy embodies a legitimate exercise of local self-governance; a reasoned judgment about how best to deploy limited law-enforcement resources while preserving community trust and public safety. The federal government's Complaint not only disregards the limits of 8 U.S.C. §§ 1373 and 1644, but also ignores the threshold jurisdictional requirement of Article III standing. Before a Federal Court may reach the merits of any claim, the plaintiff must establish an actual case or controversy under Article III, demonstrating (1) a concrete and particularized injury in fact, (2) a causal connection between that injury and the defendant's conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Government's failure to satisfy these elements is fatal to jurisdiction.

Here, the United States cannot satisfy any element of Article III standing. The Complaint identifies no concrete harm traceable to the City's policy and no relief that would redress a cognizable injury. The challenged portions of The Paterson Police Department's Standard Operating Procedures ("SOP") merely implements the statewide Immigrant Trust Directive already upheld in *County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020) , *aff'd*, 8 F.4th 176 (3d Cir. 2021) . Any alleged injury is therefore neither traceable to the City nor redressable by this Court. Even if the SOP were enjoined, Paterson would remain bound by the Directive, and the federal government retains full authority to enforce immigration law through its own means. Moreover, principles of *stare decisis* reinforce this conclusion; the legality of the Directive, and

1

by extension Paterson's implementation, has already been adjudicated and upheld, foreclosing any effective relief. Article III does not permit relitigation of settled or speculative disputes between sovereigns.

The statutes invoked by Plaintiff, §§ 1373 and 1644, do not authorize this overreach. On their face, these provisions merely prohibit state or local governments from enacting laws that bar voluntary communication of citizenship or immigration-status information. They impose no affirmative obligation to collect, maintain, or share such information and certainly do not mandate participation in federal enforcement operations. To stretch these provisions beyond their plain text, as Plaintiff urges, would contravene both the anti-commandeering doctrine and the Constitutional design of federalism, which reserves to the States and their subdivisions sovereign control over their personnel and resources. *See Murphy v. NCAA*, 584 U.S. 453 (2018); *Printz v. United States*, 521 U.S. 898 (1997), *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289 (E.D. Pa. 2018).

Federal courts applying these same principles have already rejected identical challenges to New Jersey's Immigrant Trust Directive, holding that local policies limiting discretionary cooperation with civil immigration enforcement are lawful exercises of state and municipal autonomy and are not preempted by federal law. *County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020) . To permit the federal government to proceed here, without standing and without statutory authority, would not only flout established precedent but also erode the structural protections of the Constitution by allowing one sovereign to dictate the internal operations of another.

Plaintiff's failure to establish injury, causation, or redressability as required by Article III, and because its claims otherwise rest on an untenable expansion of federal power, this Court must reject Plaintiff's invitation to upend federalism and dismiss the Complaint with prejudice pursuant to Fed. R. Civ. Pro. 12(b)(6).

## POLICIES CHALLANGED

The Paterson Police Department's Standard Operating Procedure (SOP) is a faithful, literal implementation of the New Jersey Attorney General's Law Enforcement Directive No. 2018-6, commonly known as the Immigrant Trust Directive, issued pursuant to the Attorney General's statutory authority as the State's chief law enforcement officer. The Immigrant Trust Directive itself was previously challenged and upheld as lawful and constitutional in *County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), aff'd, 8 F.4th 176 (3d Cir. 2021). Both the Directive and the SOP expressly preserve officers' authority to enforce state and federal law, reject the notion of "sanctuary," and require compliance with judicial warrants and lawful federal directives. The City's policy does not obstruct, interfere with, or contradict federal immigration enforcement; it merely codifies the limits of local authority consistent with settled constitutional principles.

The Paterson Police Department's Standard Operating Procedure (SOP), policy language reiterates the central premise of the Directive: that the enforcement of state criminal laws is the responsibility of local officers, while the enforcement of civil immigration laws remains the exclusive province of the federal government. The Paterson Police Department's Standard Operating Procedure (SOP), Volume 4, Chapter 13, "Dealing with the Immigrant Community," became effective on June 12, 2019, and expressly states that its purpose is "to maintain procedures for dealing with the immigrant community in compliance with New Jersey Attorney General

Directive 2018-6." As such, the SOP draws the same bright line between state and federal responsibilities that the Directive itself establishes.

Critically, the SOP, like the Directive it implements, expressly disclaims any intent to create a "sanctuary" policy or to limit compliance with valid federal law. It states in unambiguous terms:

> "Nothing in this SOP or New Jersey Attorney General Directive 2018-6 limits officers from enforcing state law, and nothing in this directive or New Jersey Attorney General Directive 2018-6 should be construed to imply that the State of New Jersey provides sanctuary to those who commit crimes in this state. Any person who violates New Jersey's criminal laws can and will be held accountable for their actions, no matter their immigration status."

The SOP further clarifies that it does not restrict compliance with federal law or valid court orders, including judicially issued arrest warrants, "regardless of immigration status." It also recognizes that "under federal and state law, local law enforcement agencies are not required to enforce civil administrative warrants or civil detainers issued by federal immigration officers," but it does not prohibit such cooperation where required by law. Finally, the SOP mandates annual reporting to the Passaic County Prosecutor's Office of "any instances in which the agency provided assistance to federal civil immigration authorities," thereby ensuring transparency and accountability in the implementation of the Directive's statewide standards.

These provisions demonstrate that the Paterson SOP, consistent with the Immigrant Trust Directive, balances respect for federal authority with the proper delineation of state and local law-enforcement duties. Both the Directive and the SOP make clear that New Jersey officers may not act as de facto federal immigration agents, but they remain fully obligated to enforce state criminal laws, comply with federal court orders, and cooperate with federal authorities where legally required. Far from obstructing federal enforcement, the City's policy operates squarely within the

constitutional framework recognized in *Murphy v. NCAA*, 138 S. Ct. 1461 (2018), and *Printz v. United States*, 521 U.S. 898 (1997), which preserve state autonomy over local law-enforcement priorities while preventing federal commandeering of state resources.

The SOP thus mirrors Directive 2018-6 in both substance and intent. It adopts the same prohibitions against detaining individuals solely for civil immigration purposes, imposes the same limitations on disclosure of non-public information, and incorporates the same exceptions for individuals convicted of violent or serious offenses or subject to judicial removal orders. The only differences are administrative refinements, such as written consent procedures, form templates, and annual reporting requirements which facilitate compliance with the Directive's mandates.

The City's policy does not obstruct, interfere with, or contradict federal immigration enforcement; it merely codifies the limits of local authority consistent with settled constitutional principles.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive dismissal, the pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face**.**" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only where the factual content allows the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Under Third Circuit precedent, courts apply a three-part analysis to evaluate a Rule 12(b)(6) motion. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the Court must identify the elements

a plaintiff must plead to state a claim. Second, it should disregard any allegations that are merely legal conclusions, as "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Third, the Court must determine whether the well-pleaded factual allegations plausibly give rise to an entitlement to relief. *Connelly*, 809 F.3d at 787.

The United States' Complaint fails to satisfy this standard. It rests almost entirely on conclusory assertions that the City of Paterson's Standard Operating Procedure ("SOP") "obstructs" or "frustrates" federal immigration enforcement, without alleging any concrete act or statutory violation. Such bare assertions are precisely the type of legal conclusions the Court must disregard under *Twombly* and *Iqbal*. The SOP merely implements the "Immigrant Trust Directive", which the District of New Jersey and the Third Circuit have already upheld as lawful and constitutional. *County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), *aff'd*, 8 F.4th 176 (3d Cir. 2021). Because the Complaint alleges no plausible violation of law or cognizable injury traceable to the City, it fails to state a claim upon which relief can be granted.

## ARGUMET[1]

### I.  THE UNITED STATES LACKS STANDING UNDER ARTICLE III OF THE UNITED STATES CONSTITUTION

The United States' complaint should be dismissed because (i) there is no injury, (ii) no causal link, and (iii) no redressable harm sufficient to confer standing under Article III. Standing is a fundamental jurisdictional requirement.

---

[1] Defendant hereby incorporates by reference all arguments, authorities, and grounds for dismissal advanced by co-defendants and amici curiae in support of dismissal of the Complaint, as though fully set forth herein. See *Fed. R. Civ. P. 10(c)*.

To establish standing under Article III of the United States Constitution, a plaintiff must demonstrate: (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the defendant's challenged conduct (traceability); and (3) a likelihood that the injury will be redressed by a favorable decision (redressability). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Failure to satisfy any one of these elements is fatal to standing. Here, Plaintiff has failed to establish any of there.

### A.    Plaintiff Has Not Established an Injury in Fact

The threshold element of standing is the existence of an injury in fact. An alleged injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Plaintiff cannot satisfy this element because it has identified no concrete harm arising from the City of Paterson's policy.

Plaintiff does not allege that it ever made a formal request for cooperation, information, or assistance to the City of Paterson that was denied or ignored. Absent such a request and denial, there is no evidence of any interference with federal immigration enforcement. Federal courts have consistently held that speculative fears of non-cooperation do not constitute an injury in fact. *See City of San Francisco v. Trump*, 897 F.3d 1225, 1234–35 (9th Cir. 2018) (no standing where alleged injury depended on speculative future events).

Without a concrete instance where the City's policy actually impeded federal operations, Plaintiff's claimed injury is purely hypothetical. The possibility that the City *might* decline cooperation in the future is insufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[A]llegations of possible future injury are not sufficient.").

7

Plaintiff's disagreement with the Courts prior rulings regarding the State's Immigrant Trust Directive and City's discretionary law-enforcement policy does not create standing. Federal courts uniformly reject attempts by one governmental entity to challenge another's internal policy choices absent a concrete injury. *See United States v. Texas*, 599 U.S. 670, 678 (2023) (no standing where the federal government failed to show that state policies caused a judicially cognizable injury).

Plaintiff's allegation that the City's policy "could" or "may" affect enforcement lacks factual support and is speculative. Hypothetical administrative inconvenience does not satisfy the injury-in-fact requirement. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) ("No concrete harm, no standing."). Accordingly, the absence of any denied request, lost enforcement opportunity, or measurable impairment renders Plaintiff's claim nonjusticaliciable

## B. Plaintiff Cannot Demonstrate Traceability

Assuming an injury could somehow be established, Plaintiff still fails to establish the necessary causal link between the alleged harm and the City's conduct. Plaintiff has not identified a single instance in which the City's actions impeded federal immigration enforcement; thus, no causal link exists between the alleged injury and the City's policy. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976).

The City's policy merely implements the New Jersey Attorney General's Immigrant Trust Directive, which applies uniformly across the state, binds all local law enforcement agencies, and has already been upheld as lawful and constitutional. *Cty. of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020). Because any alleged injury would arise, if at all, from the statewide directive rather than from the City's independent decision-making, the element of traceability is lacking.

Moreover, the federal government retains full authority to enforce immigration laws and to obtain information through its own lawful means. The City's decision to decline voluntary cooperation does not obstruct, interfere with, or otherwise hinder federal enforcement activities, and therefore cannot be considered the cause of any cognizable injury.

### C. PLAINTIFF CANNOT DEMONSTRATE REDRESSABILITY

Even if Plaintiff could show an injury traceable to the City's policy, its claim still fails because the requested relief would not redress the alleged injury. Federal law imposes no obligation on municipalities to collect or share immigration-related information with federal authorities. *See* 8 U.S.C. § 1373; *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 331–32 (E.D. Pa. 2018). Even if this Court were to invalidate the City's policy, Paterson would not be required to take affirmative steps to assist in federal immigration enforcement. The requested relief would therefore not alter the status quo or redress any cognizable injury.

Federal immigration agencies retain full authority to enforce immigration laws, make arrests, and obtain information through independent lawful means. The City's policy does not prevent federal agents from executing warrants, conducting investigations, or otherwise performing their statutory duties. Courts have repeatedly recognized that local non-cooperation policies do not obstruct federal enforcement. *See Ocean County Board of Commissioners v. Attorney General of New Jersey*, 8 F.4th 176, 182 (3d Cir. 2021). Accordingly, invalidating the City's policy would have no material effect on the federal government's ability to enforce immigration law.

Even if this Court enjoined the City's policy, Paterson would still be bound by the New Jersey Attorney General's Immigrant Trust Directive, which applies uniformly statewide and has already been upheld as lawful and constitutional. *Cty. of Ocean v. Grewal*, 475 F. Supp. 3d 355

(D.N.J. 2020). Because that directive remains in force, any relief directed solely at the City would have no practical effect on Plaintiff's alleged injury. The continuing operation of the statewide directive severs any link between the requested remedy and the claimed harm, defeating redressability.

Plaintiff's own pre-motion conference letter confirms that the questions raised here have already been litigated and resolved in _Cty. of Ocean v. Grewal_. In that filing, the United States expressly acknowledges that _Grewal_ "previously rejected" identical arguments and that it now seeks a "re-examination of that ruling" so that the law in this Circuit might align with contrary Second Circuit precedent. _See_ Dkt 30 at 3. This admission shows that Plaintiff is not seeking to redress a current injury, but merely asking this Court to reconsider settled precedent, an objective that does not satisfy the redressability requirement of Article III.

The constitutional and statutory questions Plaintiff raises here concerning the scope of 8 U.S.C. §§ 1373 and 1644, the anti-commandeering doctrine, and local discretion over immigration enforcement, have already been fully resolved in that binding decision. Plaintiff is simply repackaging the same theories against the City of Paterson. _Grewal_ remains controlling law within this District and Circuit, and principles of stare decisis require that the same legal conclusions govern here. Judicial economy and finality principles preclude duplicative litigation over identical legal issues already decided by the District of New Jersey and affirmed by the Third Circuit.

Because (1) the City has no federal obligation to collect or share immigration information, (2) federal enforcement authority remains unaffected, (3) the statewide Directive would continue to bind the City, and (4) Plaintiff's claims are foreclosed by settled precedent and preclusion doctrines, the requested relief would not redress any alleged injury. Accordingly, the complaint should be dismissed with prejudice for lack of redressability.

## II.    COUNT I FAILS AS A MATTER OF LAW BECAUSE THE CITY'S POLICY IS NOT    PREEMPTED

Plaintiff alleges in Count I that the City's policy ("Policy") unlawfully obstructs the federal government's ability to enforce immigration law, and that it is preempted under both express and conflict preemption principles pursuant to 8 U.S.C. §§ 1373(a) and 1644. Complaint ¶¶ 83-84. However, this claim fails as a matter of law under binding precedent, including County of Ocean v. Grewal, and established Supreme Court and Third Circuit preemption doctrine.

Critically, these statutes impose no affirmative obligation on governmental entities to collect or exchange information. Instead, they merely prohibit state or local governments from adopting policies that restrict or interfere with the voluntary sharing of information regarding an individual's citizenship or immigration status. The provisions of the relevant federal statutes do not require affirmative action by state or local governments. They only preclude the enactment of laws or policies that would *block* voluntary information sharing. Because the City's Policy does not prohibit such voluntary communication, there is no basis for preemption.

### A. Express Preemption Does Not Apply

Express preemption arises only where Congress clearly states its intent to displace state or local law in the text of a federal statute. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992), the Supreme Court struck down state-imposed airline advertising guidelines because they conflicted with the Airline Deregulation Act, which expressly preempted such state regulation over private actors.

By contrast, in *Murphy v. NCAA*, 584 U.S. 453 (2018), the Supreme Court rejected a preemption claim, holding that the Professional and Amateur Sports Protection Act (PASPA), 28 U.S.C. § 3702, directly commanded states to refrain from enacting certain laws, a structure incompatible with constitutional federalism. Unlike the Airline Deregulation Act, which regulated

private conduct, PASPA sought to control state legislative and executive action. The Court emphasized that "every form of preemption that we have recognized operates on state laws regulating private conduct, not on the States themselves." *Id.* at 487.

Sections 1373 and 1644 operate the same way: they do not regulate private conduct or impose affirmative duties on governmental entities. Instead, they merely forbid the adoption of policies that affirmatively block voluntary communication of "information regarding the citizenship or immigration status" of individuals.

As the District of New Jersey held in *County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), these statutes, read plainly, require only that a state not *prohibit* or *restrict* the voluntary sharing of a narrow category of information: "citizenship or immigration status." Id. at 288-89. (*emphasis added*). The court in Grewal rejected any reading of §§ 1373 and 1644 that would require states or localities to affirmatively collect or share broader categories of information. Interpreting "information regarding the citizenship or immigration status" to encompass general personal or identifying information would impermissibly expand the statute and violate the Tenth Amendment by compelling state action. Id.

Thus, express preemption does not apply because the Policy neither prohibits communication of "citizenship or immigration status" nor does it conflict with a federal mandate to do so.

### B. There Is No Conflict Preemption

Conflict preemption occurs where it is impossible to comply with both state and federal law, or where state law stands as an obstacle to the objectives of Congress. Hines v. Davidowitz, 312 U.S. 52, 67 (1941); Arizona v. United States, 567 U.S. 387, 399 (2012). But as the Grewal court held, there is no conflict between a state or local policy that limits local cooperation with

federal immigration enforcement and §§ 1373 or 1644. The Third Circuit went further, categorically holding that these provisions cannot preempt the Directive because they regulate States, not private actors. *Ocean County Board of Commissioners v. Attorney General of New Jersey*, 8 F.4th 176, 182 (3d Cir. 2021). Federal law must regulate private actors to preempt state law. Id. This understanding aligns with the Third Circuit's observation that conflict preemption must be grounded in clear evidence of interference with federal objectives, not mere policy differences. *Farina v. Nokia Inc.*, 625 F.3d 97, 123 (3d Cir. 2010).

Here, the City's Policy does not prohibit communication of immigration status. Far from being an effort to obstruct federal enforcement, The City's limits are a deliberate exercise of the City's discretion to promote public safety, foster trust between law enforcement and immigrant communities, and implement its sanctuary city policy. These are legitimate local priorities that fall squarely within the City's police powers. Critically, nothing in federal law requires states or municipalities to affirmatively participate in federal immigration enforcement. *See also* Printz v. United States, 521 U.S. 898, 935 (1997) (holding that the federal government "may neither issue directives requiring the States to address particular problems, nor command the States' officers…to administer or enforce a federal regulatory program").

Accordingly, Plaintiff's conflict preemption argument must fail, because it depends on an overbroad reading of the federal statutes and misstates the nature of the Policy.

### C. Sections 1373 and 1644 Cannot Be Read to Require Information Sharing Without Violating the Constitution

To the extent Plaintiff relies on 8 U.S.C. §§ 1373 or 1644 to demand that the City share personal information with immigration authorities, such a reading would render those statutes unconstitutional under Murphy and Printz. Courts interpreting §§ 1373 and 1644 have declined to

give them such expansive readings precisely because they would violate the Tenth Amendment if construed to compel affirmative information sharing by state or local actors.

In <u>County of Ocean v. Grewal</u>, the court held that §§ <u>1373</u> and <u>1644</u> may only prohibit express bans on sharing an individual's citizenship or immigration status, but they cannot compel any affirmative conduct, nor can they be read to mandate the disclosure of broader categories of information such as names, addresses, or release dates. *Id.* at 289. To interpret these statutes otherwise would transform them into impermissible federal directives to local officials, contrary to the Supreme Court's clear anti-commandeering jurisprudence.

Similarly in <u>City of Philadelphia v. Attorney General of the United States, 916 F.3d 276 (3d Cir. 2019)</u>, the Third Circuit strongly cautioned against interpreting federal statutes in ways that force states or cities to participate in civil immigration enforcement. The court emphasized that "immigration enforcement is primarily a federal responsibility, and the Tenth Amendment prohibits the federal government from forcing states or localities to administer federal regulatory programs." *Id.* at 291.

Accordingly, any construction of §§ 1373 or 1644 that would require affirmative information sharing by local governments must be rejected as unconstitutional. Furthermore, for all these reasons, Count I fails as a matter of law because The City's Policy is neither expressly nor conflict preempted under 8 U.S.C. §§ 1373 and 1644. Therefore, This Court should therefore grant Defendant's Motion for Judgment on the Pleadings and dismiss Count I with prejudice.

## III.   COUNT II FAILS AS A MATTER OF LAW BECAUSE THE CITY'S POLICY DOES NOT DISCRIMINATE AGAINST THE FEDERAL GOVERNMENT

Plaintiff alleges in Count II that the City's Policy unlawfully discriminates against the federal government and singles it out for "unfavorable and uncooperative treatment." <u>Complaint</u> ¶¶ 87-90. Plaintiff further alleges that the Policy violates the constitutional doctrine of

intergovernmental immunity. Complaint ¶¶ 90. These claims are legally unsupported and must be dismissed.

### A. The City's Policy Does Not "Regulate" the Federal Government and Is Not Discriminatory

The City's policy is fully consistent with the Supremacy Clause and the doctrine of intergovernmental immunity.  That doctrine, first articulated in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), holds that states "have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control" federal operations. *Id.* at 436. The Supreme Court has repeatedly reaffirmed this principle, most recently in *United States v. Washington*, 596 U.S. 832 (2022), emphasizing that state and local governments may not interfere with or regulate federal authority. *Id.* at 842.

Intergovernmental immunity does not prohibit states or localities from refusing to assist the federal authorities.  *North Dakota v. United States*, 495 U.S. 423 (1990), the Supreme Court clarified that state laws violate intergovernmental immunity only when they regulate federal functions differently from others or discriminate against the federal government or its contractors. *Id.* at 435. Mere inconvenience or lack of cooperation does not suffice.

This principle is particularly relevant in the immigration context, where enforcement authority rests exclusively with the federal government.  Discrimination requires differential treatment of the federal government compared to similarly situated entities. Because there are no similarly situated entities against which to measure treatment, a municipal policy that governs only city employees' conduct cannot be said to treat the federal government less favorably.

Courts have found violations only when ordinances directly regulated or singled out federal officials. See, e.g., *United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010) (invalidating ordinances targeting federal agents); *GEO Grp., Inc. v. Newsom*, 50 F.4th 745; *GEO Grp., Inc.*

*v. Newsom*, 15 F.4th 919. Here, the City's policy falls squarely within these limits and applies uniformly without singling out any particular entity for disparate treatment. Immigration enforcement is an exclusively federal function; there are no similarly situated comparators against which to measure differential treatment. Unlike the ordinances struck down in *United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010), which directly regulated federal agents, the City's policy does not target federal officials or single out the federal government for unfavorable treatment nor does it obstruct federal authority. Federal law, including 8 U.S.C. §§ 1373, 1644, and 1357, prohibits states and localities from restricting communication with federal immigration authorities. The City's policy respects those limits. It does not bar access to information or prevent federal agents from enforcing immigration law. It simply directs City employees not to engage in civil immigration enforcement activities unless required by law. *See* City Policy § B.

The City's policy here does not obstruct federal immigration enforcement nor discriminates against the federal government. It is a permissible exercise of municipal authority over its workforce, consistent with the Supremacy Clause and the limits of intergovernmental immunity.

### B. Refusal to Assist Federal Immigration Enforcement Is Not Discrimination

Plaintiff contends that the City's Policy "discriminates" against the federal government by making it more difficult to enforce federal immigration law. That claim misconstrues both the doctrine of intergovernmental immunity and the Constitutional limits of federal power. In reality, the United States' objection is not that the City has regulated federal immigration enforcement, but that it has declined to assist, something the federal government cannot compel under the Tenth Amendment.

The City's Policy is a lawful exercise of municipal discretion, designed to conserve limited local resources and maintain public trust in community policing. It does not impose any regulation

on the federal government or treat it differently from any other entity. Rather, it simply directs how City personnel may use municipal resources. The Supreme Court has made clear that the federal government may not "commandeer" state or local officials to carry out federal programs. *Printz v. United States*, 521 U.S. 898, 935 (1997). The Constitution's anti-commandeering principle forbids Congress or federal agencies from compelling local governments to administer or enforce federal regulatory schemes. *Murphy v. NCAA*, 584 U.S. 453, 479 (2018) (holding that federal laws dictating what state legislatures "may or may not do" violate the Tenth Amendment).

This principle has been consistently applied to immigration enforcement. In *City of Philadelphia v. Attorney General of the U.S.*, 916 F.3d 276, 291–94 (3d Cir. 2019), the Third Circuit struck down federal conditions that sought to force local governments to share immigration information as a condition of federal grants, finding such conditions unconstitutional under the Tenth Amendment. Similarly, *County of Ocean v. Grewal*, 522 F. Supp. 3d 266, 287–88 (D.N.J. 2021), upheld New Jersey's non-cooperation directive, recognizing that "refusing to assist federal immigration authorities does not obstruct federal law," and that compelling such participation "raises serious constitutional concerns under the anti-commandeering doctrine."

Accordingly, to the extent Plaintiff's claims seek to compel Paterson to share information or assist in federal immigration enforcement, those claims are constitutionally barred. The federal government's authority to preempt state laws extends only to regulation of private actors, not to conscripting local governments into federal service.

Nor can Plaintiff recast this constitutional defect as "discrimination." As the Ninth Circuit held, "intergovernmental immunity prohibits discriminatory regulation, not a local government's decision not to participate." *United States v. California*, 921 F.3d 865, 882 (9th Cir. 2019). Federal discrimination arises only when a local policy subjects the federal government to unequal

17

treatment as compared to others. See *United States v. Washington*, 596 U.S. 832 (2022) (state law invalid where it imposed unique burdens on the federal government not borne by private entities); *GEO Group, Inc. v. Newsom*, 50 F.4th 745, 757 (9th Cir. 2022) (finding discrimination where California exempted state but not federal detention facilities).

Here, no such differential treatment exists. The City's Policy applies uniformly, it neither regulates nor penalizes federal operations. At most, it withholds voluntary assistance, an action fully protected by the anti-commandeering doctrine and the principles of federalism. Mere inconvenience to federal authorities does not constitute interference or discrimination.

Because Paterson's Policy neither regulates nor discriminates against the United States, and because the federal government lacks constitutional authority to compel municipal participation in federal enforcement, Plaintiff's intergovernmental immunity claim fails as a matter of law. The Court should therefore grant Defendant's Motion for Judgment on the Pleadings and dismiss Count II with prejudice.

## IV.    COUNT III FAILS AS A MATTER OF LAW BECAUSE THE CITY'S POLICY DOES NOT REGULATE THE FEDERAL GOVERNMENT

Plaintiff alleges in Count III that the City's Policy unlawfully "regulates" the federal government by declining to honor immigration detainers and warrants, which Plaintiff claims are "expressly authorized by Congress." Complaint ¶¶ 93-94. Plaintiff further argues that the City has thereby "eliminated" means for federal immigration officials to carry out their statutory duties. Id. These claims are legally unfounded.

### A. Supreme Court Precedent Establishes That State and Local Laws Are Not Automatically Preempted Merely Because They Touch Immigration

In *Kansas v. Garcia*, 589 U.S. 82 (2020), the Supreme Court reaffirmed that not all state or local activity that touches on immigration is preempted by federal law. The Court rejected a

sweeping theory of field preemption and held that states retain substantial authority to act in areas involving noncitizens unless Congress has clearly displaced such authority.

In *Garcia*, the Court upheld Kansas's prosecution of undocumented individuals for identity theft based on false information provided on state employment forms, despite the overlap with federal immigration law. Id. at 91-97. The Court emphasized that federal law "does not prevent the States from relying on the same information used in federal forms when enforcing their own laws," and that preemption does not occur "merely because the federal government regulates in the same area." Id. at 95-96.

This principle applies with equal force in this case. Plaintiff's theory rests on the premise that because immigration enforcement is a federal function, the City's Policy is necessarily preempted. But as *Garcia* makes clear, overlap with federal objectives alone is insufficient. The City's Policy does not attempt to regulate immigration or interfere with federal enforcement; it merely reflects a local decision not to expend municipal resources to assist in federal civil immigration efforts. Such a policy is a classic example of discretionary local governance, not an encroachment into the federal sphere.

Accordingly, the City's Policy is not preempted merely because it relates tangentially to immigration. Absent a direct conflict with federal law or a clear congressional mandate requiring affirmative participation, preemption does not apply. Federal authorities remain free to enforce immigration laws independently, consistent with their statutory authority.

## B. Local Refusal to Honor Immigration Detainers Is Lawful and Not Federally Mandated

Federal immigration detainers are requests, not legal commands, issued by U.S. Immigration and Customs Enforcement (ICE) asking local jurisdictions to hold individuals beyond their normal release times. As numerous courts have held, including within the Third Circuit,

compliance with immigration detainers is purely voluntary. *See* Galarza v. Szalczyk, 745 F.3d 634, 640–41 (3d Cir. 2014) (holding that local compliance with ICE detainers is discretionary and that detainers are not mandatory under federal law.)

Thus, the City's refusal to detain individuals solely based on immigration detainers is entirely lawful and cannot be construed as "regulation" of federal authority. In fact, forcing localities to honor detainers would likely raise Tenth Amendment concerns, as the Supreme Court recognized in <u>Printz v. United States</u>, 521 U.S. 898 (1997), which held that the federal government may not commandeer state or local officials to implement federal programs.

### C. The City's Policy Does Not Interfere with the Federal Government's Immigration Powers

Plaintiff argues that the City's Policy unlawfully eliminates federal tools or "means" of enforcement But this argument fundamentally misconstrues the constitutional relationship between state and federal governments. As the Supreme Court has repeatedly held, states and their agents are not conscripts of federal immigration enforcement. The federal government may not compel state or local. *See Printz v. United States*, 521 U.S. 898, 935 (1997) ("The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers...to administer or enforce a federal regulatory program.").

Consistent with this principle, the Third Circuit and other courts have held that local policies declining cooperation do not obstruct the federal government from acting on its own. In *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), the court upheld Chicago's "Welcoming City" ordinance, which limited cooperation with ICE, finding it "does not interfere in any way with the federal government's lawful pursuit of its civil immigration activities" and "does not immunize anyone from the reach of the federal government." *Id.* at 281.

Likewise, in *County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), the court upheld a similar non-cooperation directive issued by New Jersey's Attorney General, rejecting the argument that it amounted to a regulation of immigration. The court emphasized that such policies merely limit local involvement; they do not prevent the federal government from carrying out its duties. Id. at 287-89.

Plaintiff's assertion that the Policy "eliminates" federal tools is not only factually incorrect because federal agents retain full authority to issue detainers and make arrests and enforce immigration law independently but is also legally irrelevant. The Constitution does not transform states and municipalities into tools of federal enforcement. To the contrary, federalism preserves their right to direct their own resources and personnel.

Count III fails to state a valid claim under any theory of federal supremacy or intergovernmental regulation. The City's Policy merely sets boundaries for the conduct of local officials with respect to voluntary participation in civil immigration enforcement. It neither regulates immigration, interferes with federal operations, nor usurp federal authority. Like Chicago's "Welcoming City" Ordinance upheld in *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), the Policy serves legitimate local purposes, including promoting public safety, fostering trust between law enforcement and immigrant communities, and ensuring the effective allocation of limited municipal resources. Because the Policy identifies no binding legal duty requiring the City to assist federal immigration authorities, Count III should be dismissed.

## V.     **THE FEDERAL GOVERNMENT'S DEMANDS VIOLATE THE ANTI-COMMANDEERING DOCTRINE**

To the extent Plaintiff's Complaint seeks to compel the City of Paterson to share information with federal immigration authorities, particularly personal identifying information,

such a demand violates the anti-commandeering doctrine established under the Tenth Amendment to the U.S. Constitution. This doctrine explicitly prohibits the federal government from forcing state or local governments to administer or enforce federal regulatory programs. That is precisely what Plaintiff seeks to do here.

### A. The Anti-Commandeering Doctrine Prohibits Federal Compulsion of State or Local Governments

To the extent Plaintiff seeks to compel the City of Paterson to share information or assist federal immigration authorities, its claims contravene the Tenth Amendment. The anti-commandeering doctrine prohibits the federal government from directing state or local governments to administer or enforce federal regulatory programs. *Printz v. United States*, 521 U.S. 898, 935 (1997); *Murphy v. NCAA*, 584 U.S. 453, 479 (2018).

In *City of Philadelphia v. Attorney General of the United States*, 916 F.3d 276 (3d Cir. 2019), the Third Circuit invalidated federal conditions requiring cities to share immigration-related information as a prerequisite to law-enforcement grants, holding that such mandates impermissibly intruded upon local control of police operations. Likewise, in *County of Ocean v. Grewal*, 522 F. Supp. 3d 266, 287–88 (D.N.J. 2021), the court emphasized that compelling state or local participation in federal immigration enforcement "raises serious constitutional concerns under the anti-commandeering doctrine."

Paterson's policy mirrors the constitutional framework upheld in those cases. It does not obstruct federal law; it merely declines to expend municipal resources on federal civil-immigration enforcement. The Constitution does not authorize the federal government to conscript local officials into federal service. Accordingly, any claim seeking to compel Paterson's participation in immigration enforcement fails as a matter of law.

## VI.    THE CITY'S POLICY IS A LAWFUL EXERCISE OF LOCAL POLICE POWER

### A.  Local Governments Retain Authority Over Their Law-Enforcement Operations

The Paterson Police Department's Standard Operating Procedure § 4-13 lawfully directs municipal officers regarding their duties and priorities. Municipalities possess inherent authority to supervise employees and allocate law-enforcement resources. *Printz*, 521 U.S. at 935.

### B.  Third-Circuit Precedent Confirms the Validity of Non-Cooperation Policies

In *City of Philadelphia*, 916 F.3d at 280–91, the court upheld Philadelphia's decision not to share certain information with federal immigration authorities, concluding that such policy choices reflect legitimate local judgments about effective policing and community safety. Similarly, in *Grewal*, 522 F. Supp. 3d at 284–86, the court upheld New Jersey's "Immigrant Trust Directive," which, like Paterson's policy, limits cooperation with federal civil-immigration enforcement absent a legal requirement.

Paterson's policy follows this same constitutionally protected path. It promotes public safety, fosters community trust, and ensures efficient use of limited resources. It neither obstructs federal agents nor immunizes anyone from federal law; it simply reflects the City's prerogative to determine how its officers serve the community.

## VII.    PLAINTIFF'S CLAIM FAILS BECAUSE THE CITY DOES NOT COLLECT THE REQUESTED INFORMATION

Even assuming a valid statutory basis, which does not exist, the City cannot produce information it does not possess. Paterson's policy expressly declines to collect or maintain data concerning immigration status. The federal government cannot compel a municipality to create or manage databases solely to advance federal objectives. *Printz*, 521 U.S. at 935.

Plaintiff's theory would require the City to establish new record-keeping systems for the benefit of federal agencies, precisely the type of administrative commandeering the Supreme Court forbids.

## CONCLUSION

For all the foregoing reasons, the United States' Complaint must be dismissed in its entirety. The federal government has failed to establish any of the indispensable elements of Article III standing; injury, causation, or redressability, and thus this Court lacks jurisdiction to entertain the action. Even if jurisdiction could somehow be sustained, each count of the Complaint collapses on the merits. The City of Paterson's Standard Operating Procedure is a lawful and faithful implementation of the New Jersey Attorney General's Immigrant Trust Directive, a policy already upheld by both the District Court and the Third Circuit. It neither conflicts with nor obstructs federal law, discriminates against the United States, or regulates federal functions.

At its core, this litigation represents an attempt by the federal government to compel a municipality to administer and enforce a federal regulatory program, a result the Tenth Amendment squarely forbids. Federalism does not permit Washington to draft local police into federal service or to dictate how municipal resources must be deployed. The City's policy merely defines the limits of its own officers' authority, consistent with constitutional structure, Supreme Court precedent, and established state law.

Because the United States lacks standing and because its claims rest on an untenable theory of federal supremacy that would erase the Constitution's most fundamental safeguards of state sovereignty, this Court should grant Defendant's Motion for Judgment on the Pleadings and dismiss the Complaint with prejudice.

Respectfully Submitted,
/s/ Aymen A. Aboushi, Esq.
Corporation Counsel City of Paterson
/s/ Owen T. Campbell, Esq.
Assistant Corporation Counsel