**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEWARK ET AL.,<br><br>Defendants. | Hon. Evelyn Padin, U.S.D.J.<br>Hon. Andre M. Espinosa, U.S.M.J.<br><br>Civil Action No. 2:25-cv-5081<br><br>**CIVIL ACTION**<br><br>**(ELECTRONICALLY FILED)**<br><br>Motion Return Date: 12/15/2025 |

REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S COMPLAINT

Neal K. Katyal (admitted *pro hac vice*)
Colleen Roh Sinzdak (admitted *pro hac vice*)
Kristina Alekseyeva (admitted *pro hac vice*)
MILBANK LLP
1101 New York Ave, NW
Washington, DC 20005

Gurbir S. Grewal, Bar No. 027771999
   *Counsel of Record*
MILBANK LLP
55 Hudson Yards
New York, NY 10001
ggrewal@milbank.com
Tel.: (212) 530-5000
Fax: (212) 530-5219

*Attorneys for Defendants City of Newark,
Newark City Council, C. Lawrence Crump,
Ras J. Baraka, City of Hoboken, Hoboken City
Council, James Doyle, and Ravinder S. Bhalla*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................................................1

ARGUMENT..........................................................................................................................2

I.    The Court Should Dismiss For Lack Of Standing ................................................2

II.   The Court Should Alternatively Dismiss On The Merits......................................6

III.  There Is No Intergovernmental Immunity Problem............................................10

CONCLUSION....................................................................................................................11

## TABLE OF AUTHORITIES

**CASES:**                                                                                                    Page(s)

*Arizona v. United States*,
    567 U.S. 387 (2012)......................................................................................................8

*Citizens United v. FEC*,
    558 U.S. 310 (2010)......................................................................................................5

*City of Hazleton v. Lozano*,
    563 U.S. 1030 (2011) ...................................................................................................6

*Const. Party of Pa. v. Cortes*,
    824 F.3d 386 (3d Cir. 2016)..........................................................................................5

*CoreCivic, Inc. v. Governor of N.J.*,
    145 F.4th 315 (3d Cir. 2025)................................................................................4, 5, 11

*County of Ocean v. Grewal*,
    475 F. Supp. 3d 355 (D.N.J. 2020) .........................................................................7, 8, 9

*Dawson v. Steager*,
    586 U.S. 171 (2019).....................................................................................................10

*Dreibelbis v. Scholton*,
    274 F. App'x 183 (3d Cir. 2008) ...................................................................................4

*Galarza v. Szalczyk*,
    745 F.3d 634 (3d Cir. 2014) ..........................................................................................8

*Harp Advertising Ill. Inc. v. Village of Chi. Ridge*,
    9 F.3d 1290 (7th Cir. 1993)...........................................................................................3

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,
    452 U.S. 264 (1981)......................................................................................................9

*Hollis v. Lynch*,
    827 F.3d 436 (5th Cir. 2016)......................................................................................1, 3

*Jones v. Bock*,
    549 U.S. 199 (2007)...................................................................................................3, 4

*Larson v. Valente*,
    456 U.S. 228 (1982)......................................................................................................6

*Lozano v. City of Hazleton*,
    620 F.3d 170 (3d Cir. 2010) ..........................................................................................6

ii

# TABLE OF AUTHORITIES—Continued

Page(s)

*Maldonado v. Morales*,
    556 F.3d 1037 (9th Cir. 2009).................................................................................1, 3

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)......................................................................................................6

*Matsumoto v. Labrador*,
    122 F.4th 787 (9th Cir. 2024)...............................................................................3, 4, 6

*McHenry County v. Raoul*,
    44 F.4th 581 (7th Cir. 2022)..............................................................................10, 11

*Montana v. United States*,
    440 U.S. 147 (1979)......................................................................................................3

*Murphy v. NCAA*,
    584 U.S. 453 (2018)...................................................................................................8, 9

*Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of N.J.*,
    8 F.4th 176 (3d Cir. 2021).......................................................................................1, 7, 8

*Printz v. United States*,
    521 U.S. 898 (1997)......................................................................................................9

*Ramos v. Louisiana*,
    590 U.S. 83 (2020)........................................................................................................8

*Reps. Comm. for Freedom of the Press v. Rokita*,
    147 F.4th 720 (7th Cir. 2025)....................................................................................5, 6

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)......................................................................................................5

*State of New York v. Dep't of Just.*,
    951 F.3d 84 (2d Cir. 2020).........................................................................................10

*United States v. California*,
    921 F.3d 865 (9th Cir. 2019).......................................................................................8

*United States v. California*,
    2018 WL 5780003 (E.D. Cal. Nov. 1, 2018) ...........................................................11

*United States v. King County*,
    122 F.4th 740 (9th Cir. 2024)...............................................................................10, 11

**TABLE OF AUTHORITIES—Continued**

Page(s)

*United States v. New Jersey*,
  2021 WL 252270 (D.N.J. Jan. 26, 2021) ..............................................................1, 10

*United States v. New York*,
  2025 WL 3205011 (N.D.N.Y. Nov. 17, 2025) .........................................................2

*United States v. Washington*,
  596 U.S. 832 (2022)..............................................................................................11

**CONSTITUTION:**

U.S. Const. amend. X...............................................................................................2, 8, 9

**STATUTES:**

8 U.S.C. § 1373(a) ...................................................................................................7, 10

8 U.S.C. § 1644........................................................................................................7

N.J. Stat. Ann. § 30:4-8.16(b)(1) ............................................................................4

**RULES AND REGULATIONS:**

8 C.F.R. § 287.7(a)...................................................................................................8

Attorney General Law Enforcement Directive No. 2018-6 v2.0
  (Sept. 27, 2019), https://www.nj.gov/lps/dcj/agguide/directives
  /ag-directive-2018-6_v2.pdf ................................................................................4

**PRELIMINARY STATEMENT**

Nothing the United States says in the Response overcomes the fact that prior decisions from this Court and the Third Circuit foreclose its preemption challenge. The Court should dismiss for at least two separate and independent reasons.

First, the United States lacks standing. The United States asks this Court to prevent the Cities from enforcing their local Orders regarding cooperation with federal civil immigration authorities, but the federal government cannot establish Article III injury or redressability because New Jersey's Immigrant Trust Directive ("Directive") requires the Cities to adopt the same policies and practices embodied in their Orders. And the United States is precluded from challenging the Directive's lawfulness because this Court already rejected that challenge in *United States v. New Jersey*, 2021 WL 252270 (D.N.J. Jan. 26, 2021). The United States' response does not overcome this fundamental defect. The federal government halfheartedly suggests that the Cities' Orders are more restrictive than the Directive, but the Cities' opening brief already demonstrated that those distinctions are illusory and that the United States has not and cannot establish any non-speculative injury traceable to the Cities' policies rather than the Directive. The United States also touts a pair of cases that declined to dismiss where, as here, two overlapping laws prohibited the same conduct. But plaintiffs in those cases—unlike the United States here—could challenge the parallel law in a later suit in which they were "likely" to succeed. *Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009); *see Hollis v. Lynch*, 827 F.3d 436, 442 (5th Cir. 2016). The suit must therefore be dismissed for lack of standing.

Second, the United States' preemption theory is foreclosed on the merits under *Ocean County Board of Commissioners v. Attorney General of New Jersey*, 8 F.4th 176 (3d Cir. 2021). While the United States concedes as much with respect to its express preemption claims, it insists

1

that its conflict-preemption argument survives because it is broader than those presented in *Ocean County*. Incorrect. Plaintiffs in *Ocean County* raised the very same arguments. And in any event, local officials' decision to limit their voluntary cooperation does not obstruct federal officials' ability to enforce federal law—especially when the Immigration and Naturalization Act ("INA") expressly permits local governments not to cooperate. Any other conclusion would run headlong into the Tenth Amendment.

Finally, the United States' intergovernmental immunity claims are meritless. The Cities' Orders simply limit their own officers' actions; they do not regulate federal agents or prevent them from enforcing immigration laws. Nor do the Cities' Orders discriminate against the federal government by treating it differently than any similarly situated entity. They focus on federal immigration authorities only because immigration enforcement is the sole responsibility of the United States.

Tellingly, the United States cannot muster a single case endorsing even one of its theories. Rather, every court to consider them has rejected them all outright—including just last month in *United States v. New York*, 2025 WL 3205011 (N.D.N.Y. Nov. 17, 2025). This Court should follow suit.

**ARGUMENT**

**I.    The Court Should Dismiss For Lack Of Standing.**

In their opening brief, the Cities explained that the United States could not establish injury or redressability because the Directive requires the Cities to adopt the very same policies reflected in their Orders, and the United States is precluded from challenging the Directive by this Court's decision in *New Jersey*. The United States attempts to avoid this fundamental jurisdictional defect by arguing (at 11-12) that a favorable ruling from this Court could "result in overturning" the Directive because a win in this case would mean the Directive is also "unlawful." That is wishful,

but also flatly wrong.  Where the "question presented . . . was determined adversely to the United States in a prior" proceeding, a court *must* dismiss a successive challenge.  *Montana v. United States*, 440 U.S. 147, 152-153 (1979).  The United States cannot evade these traditional preclusion principles, and this challenge cannot reopen doors closed in *New Jersey*.

This case therefore is unlike *Maldonado* or *Hollis*, where plaintiffs had never challenged the parallel statute and therefore could do so in a later proceeding.  *See Maldonado*, 556 F.3d at 1043; *accord Hollis*, 827 F.3d at 442.  Indeed, *Maldonado* explained that where a "*valid* ordinance" not subject to challenge independently imposes the same restriction, the plaintiff cannot establish traceability.  556 F.3d at 1043 (citation omitted); *see also Matsumoto v. Labrador*, 122 F.4th 787, 800 (9th Cir. 2024) (plaintiffs "cannot establish traceability" where "the conduct they wish to engage in could, theoretically, violate other unchallenged" statutes); *Harp Advertising Ill., Inc. v. Village of Chi. Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993) (similar).[1]

The United States protests that a plaintiff may bring a lawsuit without naming "every defendant that may cause it harm."  Opp. 12 (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007); *Matsumoto*, 122 F.4th at 801-802).  That is true but irrelevant.  For example, *Matsumoto* held that a plaintiff may challenge a statute by suing the state attorney general, without naming every other government official who could potentially enforce *that same* statute against him.  The Ninth Circuit explained:  "Where a state statute specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities

---

[1] *Hollis* is inapplicable for the additional reason that the parallel law there did not actually establish a separate restriction.  The plaintiff in that case challenged a federal law that prohibited possession of machine guns.  827 F.3d at 441.  The defendant argued the plaintiff could not prove traceability because a state statute independently prohibited possessing machine guns.  *Id.* at 442.  But the state statute expressly exempted weapons permitted under federal law, so "a judgment in favor of Hollis . . . would also likely put him in compliance under Texas law, erasing it as a separate bar" entirely. *Id.*  That was the key reason the court declined to dismiss on standing grounds.  *Id.*

3

suffices to establish redressability." 122 F.4th at 801. Nothing about that case permits a plaintiff to challenge an ordinance where *another* unchallenged (and unchallengeable) directive causes the same injuries and prevents the court from redressing them.

*Jones* is even further afield. The Court there simply allowed a prisoner to sue several prison officials for medical mistreatment without naming other officials who also injured him. 549 U.S. at 217-219. *Jones*, moreover, was about exhausting administrative remedies, not traceability. In the end, the Court held only "that exhaustion is not *per se* inadequate simply because an individual later sued was not named" originally. *Id.* at 219. None of that applies here.

The United States also reprises its argument (at 9-11) that the Cities' policies are more restrictive than the Directive. But the Cities already debunked these arguments in their opening brief. Newark Br. 7-9, 13-14. Take the United States' contention that the Cities' policies preclude "any contract . . . to detain immigrants in deportation proceedings," while the Directive does not. Opp. 9 (citation omitted). As the Cities explained, the Directive and the Orders are in accord on this issue because both prohibit local officials from entering any *new* contracts but do not require them to withdraw from existing ones. Newark Br. 17; *see also* Directive § III; Compl. ¶ 41. The United States says nothing in response, which is enough to dispose of the argument. *E.g.*, *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (an argument is "waived" where plaintiff "had ample opportunity to make [it] in response to defendants' motion to dismiss and failed to do so").

Moreover, the Cities explained in their opening brief that N.J. Stat. Ann. § 30:4-8.16(b)(1) separately prohibits city officials from signing any agreements to operate immigration-detention centers on the federal government's behalf. *See* Newark Br. 17-18. The United States objects (at 10) that the Third Circuit struck down that statute in *CoreCivic, Inc. v. Governor of New Jersey*,

4

145 F.4th 315 (3d Cir. 2025). But the Cities already explained that the Third Circuit found the statute unconstitutional only "as applied" to private parties like CoreCivic. *Id.* at 329; *see* Newark Br. 18. The "distinction between facial and as-applied challenges" is black-letter law and "goes to the breadth of the remedy employed by the Court." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). A decision invalidating a statute as-applied renders it "unconstitutional in a particular case" only. *Const. Party of Pa. v. Cortes*, 824 F.3d 386, 394 (3d Cir. 2016) (citation omitted). So *CoreCivic* plainly does not have the breadth the United States suggests, and the statutory provision continues to independently prohibit immigration-detention agreements here.

On top of all of that, the United States still does not identify a single agreement that has been or could be affected by the Cities' policies, rendering its injuries "conjectural" and "hypothetical." Newark Br. 18 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

As for the second purported difference—that the Cities' policies "prohibit the honoring of all detainer requests," Opp. 9, while the Directive makes exceptions for serious criminal offenders—the Cities already explained that New Jersey municipalities do not operate any facilities that detain such criminals; the State and its counties do. Newark Br. 19. The Cities accordingly had no reason to include exceptions for serious criminals. Thus, after months of litigation, United States has failed to identify even a single actionable difference between the Cities' Orders and the Directive.

That makes *Rokita*, *Matsumoto*, *Larson*, *Lozano*, and *Massachusetts* irrelevant. As the United States admits, those cases apply only where a plaintiff subject to two parallel restrictions "seeks to overturn *the more restrictive* policy." Opp. 11 (emphasis added). For example, in *Reporters Committee for Freedom of the Press v. Rokita*, 147 F.4th 720 (7th Cir. 2025), media organizations challenged Indiana's "buffer law," which made it a crime to approach a law

5

enforcement officer on duty if the officer has ordered the person not to approach. *Id*. at 724. Indiana argued that the plaintiffs could not establish traceability because another statute already allowed law enforcement officers to order people to stay away in an emergency. *Id.* at 728. But the Seventh Circuit found standing because the statutes did not "overlap": reporters "conduct newsgathering activities in proximity to the police at a variety of public events . . . that do not qualify as 'emergency incidents.'" *Id.* at 728. Moreover, a reporter "could be charged and convicted under both [laws], thus resulting in steeper penalties." *Id.* at 728-729. *Rokita* does not establish standing in this case.

None of the other cases works, either. *See Matsumoto*, 122 F.4th at 800 ("there is a fair amount of conduct that Challengers seek to engage in that only [the challenged law] proscribes"); *Lozano v. City of Hazleton*, 620 F.3d 170, 192 (3d Cir. 2010), *vacated*, 563 U.S. 1030 (2011) (a favorable decision would "provide meaningful redress for the injury the . . . Plaintiffs assert"); *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (a favorable decision would require EPA "to take steps to slow or reduce" global warming (emphasis omitted)).

In short, traceability and redressability are established only where "a favorable decision will relieve a discrete injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). Because the United States does not satisfy that standard, the Court should dismiss for lack of standing.[2]

## II.    The Court Should Alternatively Dismiss On The Merits.

Binding Third Circuit precedent forecloses the United States' preemption challenge on the merits, and every court that has considered the intergovernmental immunity arguments has rejected them. Newark Br. 26-27, 30. If the Court somehow finds standing, it should dismiss on the merits.

---

[2] Even if the United States could establish an injury resulting from some distinct provision in the Cities' policies, that would only establish the United States's standing with respect to that specific provision. Newark Br. 20. The United States does not dispute this rule.

6

A.   The United States effectively concedes that the Third Circuit's decision in *Ocean County* requires dismissal of its express preemption claims.  Recall that plaintiffs in *Ocean County* argued that 8 U.S.C. §§ 1373(a) and 1644 expressly prohibit New Jersey from restricting the communication of "immigration information to the federal government," but the Third Circuit held that those provisions "cannot serve as a basis for preemption" because they prohibit "*state*" rather than "private" action.  8 F.4th at 181-182 (quotation marks and citation omitted); Newark Br. 21.  The United States' express preemption argument here is identical—even the United States does not attempt to distinguish it.  *See* Opp. 17-20; *see also id.* at 22 n.3 (candidly admitting "that *Ocean County* remains binding on this court" and that it raised the argument solely to attempt "to overturn *Ocean County*" later in the litigation).  The United States' express preemption argument is thus foreclosed, and even if it weren't, it fails for the reasons explained in the opening brief (at 24).

The conflict-preemption claim fares no better.  First, the United States is wrong that *Ocean County* did not address the broader statutory-scheme point it presses here.  The court squarely held that the Directive does not "impose an obstacle to the federal government's execution of federal immigration law."  8 F.4th at 181 (citation modified); *see also County of Ocean v. Grewal*, 475 F. Supp. 3d 355, 380, 382 (D.N.J. 2020) (noting that plaintiffs argued that "the Directive frustrates the INA's 'comprehensive framework for the detention and removal of criminal and other aliens . . . through numerous interlocking and mutually reinforcing provisions' " and that "the Directive's prohibition of § 287(g) agreements . . . 'frustrates' the federal government's enforcement of immigration law").

More fundamentally, as the Cities already explained, the logic of *Ocean County* necessarily forecloses the United States' broader argument because the Third Circuit held that *any* provision that regulates "state" rather than "private" action "cannot serve as a basis for preemption."  8 F.4th

7

at 181-182.  The "judicial decision's reasoning" is what matters.  *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020).  And here, that reasoning precludes the United States' statutory-scheme argument. *See Murphy v. NCAA*, 584 U.S. 453, 477 (2018) (all forms of preemption "work in the same way").

Regardless, the United States is wrong on the merits, too.  The United States raises just two objections to the Orders (at 15-16): that the Cities' refusal to honor detainer requests frustrates Congressional intent to expeditiously remove noncitizens and that the Cities' refusal to share information "obstruct[s] ICE's ability to procure [judicial] warrants."  Those objections rebound on the United States.  A detainer is merely a "request," 8 C.F.R. § 287.7(a); it is "not mandatory," *Galarza v. Szalczyk*, 745 F.3d 634, 642 (3d Cir. 2014).  Thus, even if Congress "presum[ed] that states would conduct their law enforcement activities in concert with federal immigration efforts," it "opted not to codify" that assumption in the INA.  *United States v. California*, 921 F.3d 865, 887 (9th Cir. 2019).  Surely, "the choice of a state to refrain from participation cannot be invalid under the doctrine of obstacle preemption where . . . it retains the right of refusal."  *Id.* at 890.

The argument about judicial warrants is even more problematic.  To state a conflict-preemption claim, a plaintiff must show a "clear and manifest" Congressional command to supersede historic state police powers.  *Arizona v. United States*, 567 U.S. 387, 400 (2012) (citation omitted).  But the United States (at 16) identifies no provision in the INA that even hints that Congress intended the States to dedicate their scarce resources to helping the federal government secure judicial warrants.  The United States falls far short of establishing conflict preemption.

B.   The United States' interpretation of the INA is also incompatible with the Tenth Amendment.  The United States claims (at 21-23, 25) that it does not seek to "mandate any" municipal action but only to "regulate private individuals."  That blinks reality.  The United States brought this lawsuit to prevent the Cities from enacting Orders that regulate their own officers;

8

ultimately, the United States seeks to tell the Cities what they "may and may not do." *County of Ocean*, 475 F. Supp. 3d at 378 (quoting *Murphy*, 584 U.S. at 474). That is precisely what the Tenth Amendment prohibits: "Congress cannot issue direct orders" to local governments. *Murphy*, 584 U.S. at 475. Nor does it matter that "the INA *as a whole* does regulate private actors," *contra* Opp. 23. The same could have been said of the Gun Control Act in *Printz v. United States*, 521 U.S. 898 (1997), which placed limits on individual gun transfers. But the Court still invalidated the specific information-sharing provisions that unconstitutionally regulated state officials. *Id.* at 932.

The United States leans (at 23) on *Hodel v. Virginia Surface Mining & Reclamation Association, Inc.*, 452 U.S. 264 (1981), but the statute there simply created minimum federal standards that governed "the activities of coal mine operators," not States. *Id.* at 288. Indeed, in holding the statute constitutional, the Supreme Court emphasized that States *were not* required to "enforce," "expend any state funds," or "participate in" the federal program "in any manner." *Id.* at 288. If the States chose to do nothing, "the full regulatory burden [would] be borne by the Federal Government." *Id.* The Tenth Amendment prevents the United States from depriving the Cities of their right to make that very choice with respect to immigration enforcement.

The United States also insists (at 24) that the anticommandeering doctrine does not apply because its exercise of federal immigration authority does not infringe on any power that has been "reserved to the States." To the contrary, the United States seeks to invade the very core of traditional state police power, including the Cities' ability to allocate their limited resources and to keep their residents safe. *See* Newark Br. 25-28. And it is no answer that the case *also* implicates federal immigration authority—federal action typically involves power delegated to the United States; the Tenth Amendment prevents the federal government from abusing that power by coopting local resources.

9

The United States finally claims (at 21-22, 24) that *State of New York v. Department of Justice*, 951 F.3d 84 (2d Cir. 2020), upheld Section 1373's constitutionality against a Tenth Amendment challenge. That once again confuses as-applied and facial rulings. The Second Circuit expressly *declined* to decide the broader constitutional question, holding only that Section 1373 "raises no commandeering concerns as applied to a federal funding requirement." *Id.* at 114 (citation modified); *see* Newark Br. 23. No such funding requirement is at stake here.

## III.    There Is No Intergovernmental Immunity Problem.

The United States claims (at 27-28) that the Cities' policies unconstitutionally regulate the federal government because they "prevent[ ] federal agents from using their Congressionally authorized tools" like administrative warrants "to detain and remove aliens." But as just discussed, federal agents are not entitled to state cooperation—the INA expressly makes that cooperation voluntary. Newark Br. 4-6, 25-26. There is no intergovernmental immunity problem under these circumstances. *E.g.*, *McHenry County v. Raoul*, 44 F.4th 581, 593-594 (7th Cir. 2022).

The United States (at 29-30) claims support from *CoreCivic* and *United States v. King County*, 122 F.4th 740 (9th Cir. 2024). But those cases involved state statutes that restricted the ability of *private* parties to contract with the United States, not local policies that sought to limit the local governments' *own officers'* cooperation with the federal immigration efforts. The Cities' opening brief explained why that distinction is critical: if a municipality violated intergovernmental immunity any time it placed limits on its own officers' participation in federal immigration activities, local "participation in such efforts would no longer be voluntary." *New Jersey*, 2021 WL 252270, at *13. The United States—again—has no response.

Nor do the Cities' policies unlawfully discriminate against the United States. There can be no discrimination unless a local government "treats similarly situated state and federal [entities] differently." *Dawson v. Steager*, 586 U.S. 171, 177 (2019). The United States still has not

10

identified any "similarly situated" entity, nor can it given that the United States is alone responsible for enforcing immigration laws.  Newark Br. 30.  The United States tries to avoid the problem by arguing (at 26) that the Cities' Orders "[o]n their face" "do not prevent state and local agents from sharing the information" with "the public and other law enforcement agencies."  But the Cities enacted those policies specifically to address their officers' participation in federal immigration enforcement, so it is natural that the Orders do not discuss the officers' interactions with "other law enforcement agencies" or the general "public."  The Seventh Circuit rejected precisely the same argument in *McHenry*, 44 F.4th at 594 n.7 (an act that "[b]y its terms" "applies only to immigration detention services" does not discriminate against the federal government).

The United States cites *King County*, *California*, and *Washington*.  But those examples only underscore the weakness of its position, because each of those cases involved a similarly situated entity that the challenged order excluded; the same is not true here.  *See King County*, 122 F.4th at 757 (order "explicitly treats contractors who serve ICE charter flights differently from" contractors who serve other types of flights (quotation marks and citation omitted)); *United States v. California*, 2018 WL 5780003, at *5 (E.D. Cal. Nov. 1, 2018) ("statutory language . . . makes clear that it applies only to purchasers and grantees of federal public lands" and not private or state lands); *United States v. Washington*, 596 U.S. 832, 839 (2022) ("The law thereby explicitly treats federal workers differently than state or private workers.").[3]

No court, in any jurisdiction, has accepted the United States' boundless theory of intergovernmental immunity.  This Court should not be the first.

---

[3] The United States also cites *CoreCivic* in support of its discrimination claim, but the Third Circuit specifically declined to decide the discrimination question in that case.  145 F.4th at 321.

11

## CONCLUSION

For the foregoing reasons, this Court should dismiss the United States' complaint.

Respectfully submitted,

/s/ Gurbir S. Grewal
Gurbir S. Grewal (027771999)

12