**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.

CITY OF NEWARK *et al.*,

     *Defendants*.

Hon. Evelyn Padin, U.S.D.J.
Hon. Andre M. Espinosa, U.S.M.J

Docket No. 2:25-cv-5081
Civil Action

**(ELECTRONICALLY FILED)**

---

**BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION AND IN SUPPORT OF THE
MOTION TO DISMISS PURSUNAT TO FED. R. CIV. PRO. 12(b)(6)**

---

AYMEN ABOUSHI - ID 38032007
  Corporation Counsel
OWEN T. CAMPBELL - ID 276602021
  Assistant Corporation Counsel
CITY OF PATERSON
155 Market St., 2nd Floor
Paterson NJ 07505
Aaboushi@patersonnj.gov
Ocampbell@patersonnj.gov

**Attorneys for defendants,
City of Paterson, Paterson City Council,
Alex Mendez, Paterson City Council President,
and André Sayegh, Mayor of Paterson**

i

## TABLES OF CONTENTS

**PRELIMINARY STATEMENT/BACKGROUND**................................................................ 1

**ARGUMENTS**.................................................................................................................... 1

**I.** THE UNITED STATES LACKS STANDING ...…………………………………............... 1

   A. No Concrete Injury; Issue Preclusion Bars the Challenge ...................................... 1

   B. Any Alleged Harm Is Not Concrete and Not Traceable to Paterson..................................... 2

   C. No Redressability…………………………………………………………………….....3

**II.** PATERSON'S SOP COMPORTS WITH THE SUPREMACY CLAUSE AND VALIDLY

EXCERCISES LOCAL AUTHORITY..........................................................................................4

   A. No Conflict Preemption; *Ocean County* Controls.................................................................4

   B. No Express Preemption Under §1373 or §1644…..................................................................5

   C. The Tenth Amendment Confirms Paterson's Authority...........................................................7

   D. No Intergovernmental Immunity Violation..........................................................................10

**CONCLUSION**................................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387 (2012) ...............................................................5, 9

*Bond v. United States* 564 U.S. 211 (2011)……………………………………….....9

*City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289 (E.D. Pa. 2018)........................................7

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999)……………………………...6

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ......................................................1, 3

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) .......................................... 6

*County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), aff'd, 8 F.4th 176 (3d Cir. 2021)

........................................................................................................................... 9

*Davila v. United States*, 247 F. Supp. 3d 650 (W.D. Pa. 2017)…………………………….8

*Dawson v. Steager*, 586 U.S. 171, 177-78 2019)……………………………………....11

*Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014) ........................................................5,8

*Greenberg v. Lehocky*, 81 F.4th 376 (3d Cir. 2023)……………………………………….2

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016)……………………………………….3, 4

*Hodel v. Virginia Surface Mining*, 452 U.S. 264 (1981)…………………………………….8

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018)……....,…………………….7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................1,3

*Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)……………………………………….3

*Loughrin v. United States*, 573 U.S. 351 (2014)……………………………………….7

*McHenry Cnty. v. Raoul*, 44 F.4th 581, 594 n.7 (7th Cir. 2022)……………………………...11

*Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009)…………………………………….3, 4

*Montana v. United States*, 440 U.S. 147, 153–54 (1979)…………………………….....2,4

*Murphy v. NCAA*, 584 U.S. 453 (2018) ...............................................................5, 6, 7

*New York v. DOJ*, 951 F.3d 84 (2d Cir. 2020)……………………………………...6

*Ocean County Bd. of Comm'rs v. Att'y Gen.*, 8 F.4th 176, 181–82 (3d Cir. 2021)………...Passim

*Printz v. United States*, 521 U.S. 898 (1997)................................................................7, 8

*Reno v. Condon*, 528 U.S. 141 (2000)...........................................................................9

*Schrader v. District Attorney of York County*, 74 F.4th 120 (3d Cir. 2023)......................1,3

*Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720 (7th Cir. 2025)..................4

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......................................................1,3

*United States v. New Jersey*, 2021 U.S. Dist. LEXIS 13781, at 36-37 (D.N.J. Jan. 26, 2021)..2,11

*United States v. Mendoza*, 464 U.S. 154, 162–63 (1984)...............................................2, 4

*United States v. Missouri*, 114 F.4th 980 (8th Cir. 2024)..............................................1,,2

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ............................................ 10

*United States v. Texas*, 599 U.S. 670 (2023) .............................................................. 5

*Wyandotte Transportation Co. v. United States*, 389 U.S. 191 (1967)..............................1, 2

**Statutes and Constitutional Provisions**

8 U.S.C. § 1373...........................................................................................5, 6, 7

8 U.S.C. § 1644 .............................................................................................5

U.S. Const. art. III ...................................................................................... 3, 4

U.S. Const. amend. X ............................................................................. 7, 8, 9, 10

## PRELIMINARY STATEMENT / BACKGROUND

The Federal Government's Opposition rests on a fundamental misconception of both the constitutional framework governing federal–state relations and the actual content of Paterson's Standard Operating Procedure ("SOP"). The Government's characterizations echo arguments repeatedly rejected by numerous courts, including this Court and the Third Circuit. Paterson's SOP is not an immigration policy, does not regulate private conduct, does not regulate federal officials, and does not impede federal operations. It is an internal resource-allocation directive governing Paterson personnel, fully consistent with the Tenth Amendment, the Immigration and Nationality Act ("INA"), and the Statewide Immigrant Trust Directive ("ITD").

For these reasons, and those detailed below, the Complaint must be dismissed in its entirety.

### ARGUMENTS[1]

## I. THE UNITED STATES LACKS STANDING

### A. No Concrete Injury; Issue Preclusion Bars the Challenge

The Government's asserted injuries collapse under *Lujan*, *Clapper*, and *TransUnion* because it identifies no instance in which Paterson obstructed a federal operation, declined a legally required action, or withheld information Congress required it to share. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). The Opposition incorrectly conflates Paterson's internal SOP with regulations aimed at federal officers. The two are categorically distinct as a matter of Constitutional structure.

The Government cites *United States v. Missouri*, 114 F.4th 980 (8th Cir. 2024), and *Wyandotte Transportation Co. v. United States*, 389 U.S. 191 (1967), for the proposition that a plaintiff may establish

---

[1] To the extent not fully asserted herein, Paterson incorporates by reference the arguments made by Co-Defendants in their Reply.

1

standing where a challenged state or local policy purportedly interferes with federal enforcement priorities. Those cases do not support the Government's theory here because those cases involved direct interference with federal enforcement, something Paterson's SOP never approaches. *Missouri* concerned a state law that affirmatively prohibited cooperation with federal firearm enforcement. *Wyandotte* addressed federal financial interests in maritime recoveries. Neither supports standing where, as here, the Federal Government retains full enforcement authority and Paterson imposes no limits on federal agents.

Although non-mutual issue preclusion cannot run against the United States, *United States v. Mendoza*, 464 U.S. 154, 162–63 (1984), the Government's prior loss in *United States v. New Jersey*, 2021 U.S. Dist. LEXIS 13781 (D.N.J. Jan. 26, 2021), still defeats standing. Because *Mendoza* prevents the United States from relitigating those same preemption theories against the State, the ITD remains an unchallengeable source of law. Paterson's SOP merely implements that Directive. Thus, while issue preclusion is not asserted here as an independent bar, the Government's inability to challenge the ITD directly means any alleged injury is traceable to the ITD, not Paterson.

### B. Any Alleged Harm Is Not Concrete and Not Traceable to Paterson

The Government's Opposition asserts that harms are "imminent" solely because Paterson may decline to provide assistance in the future. (Pl. Opp. at 20–22). But pre-enforcement standing requires a concrete, credible threat that the challenged policy will regulate the plaintiff. *See Greenberg v. Lehocky*, 81 F.4th 376 (3d Cir. 2023). *Greenberg* makes clear that speculation about how a defendant might apply a policy is insufficient; the plaintiff must demonstrate an actual, impending enforcement action or a credible threat thereof. Id. at 389–90.

Paterson's SOP does not govern the United States, does not restrain federal agents, and imposes no consequences on federal officers. Unlike in *Schrader v. District Attorney of York County*, 74 F.4th 120 (3d Cir. 2023), the United States is not "arguably" covered by any provision of Paterson's SOP. *Schrader*

2

does not assist the Government. That case involved a traditional pre-enforcement challenge where the plaintiffs themselves intended to engage in conduct arguably protected by the Constitution but arguably prohibited by a criminal statute, and where there existed a credible threat of enforcement against them. *Schrader.*

The Government alleges nothing, much less establishes, anything remotely comparable here in which Paterson obstructed a federal operation, declined any legally required action, or caused the United States to miss a detainer, enforcement opportunity, or request for assistance. Its asserted injury rests entirely on speculation about what Paterson might do in the future, which is insufficient as a matter of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–14 (2013); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427–29 (2021).

Further, The Government does not identify a single example of a missed enforcement opportunity, declined detainer, or hindered warrant due to Paterson's SOP.  Under *Spokeo* and *Lujan*, speculation is not injury-in-fact. The absence of a single real-world example of injury reinforces that traceability is lacking as a matter of law and the Court must dismiss the Complaint.

### C. No Redressability

Even if Paterson's SOP were enjoined, Paterson would remain bound by the ITD, which mandates the same core provisions. As the Third Circuit has recognized, redressability fails where, as here, "an unchallenged, and unchallengeable, legal requirement independently produces the same result." *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).

The Government's reliance on *Hollis*, *Maldonado*, and *Rokita* is misplaced. Each of those decisions involved circumstances where plaintiffs remained free to challenge the more restrictive or parallel statute in a separate proceeding, thereby preserving the possibility of redressability. Those courts

allowed the claims to proceed only because a favorable ruling would have eliminated a restraint that existed independently of any unchallengeable source of law.

In *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016), the plaintiff faced overlapping federal and state firearm prohibitions but could separately challenge the federal restriction because the state law did not bar relief. Likewise, in *Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009), the plaintiff could still attack the parallel statewide statute that independently imposed the same restriction; nothing prevented redressability if the ordinance was struck down. In *Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720 (7th Cir. 2025), the buffer-zone law at issue imposed penalties distinct from, rather than wholly overlapping with, other police-order statutes; moreover, plaintiffs were not barred from bringing a separate challenge to the parallel statutory regime. In all three cases, plaintiffs could still eliminate the injury through later litigation, and the courts expressly relied on that fact in finding standing.

For the same reason, redressability fails. Even if Paterson's SOP were enjoined, the ITD would continue to impose the same operative limits, and the Government cannot challenge the ITD again because *Mendoza* bars relitigation against the State. The Court therefore cannot grant relief that would eliminate the asserted injury, making Article III redressability impossible.

## II. PATERSON'S SOP COMPORTS WITH THE SUPREMACY CLAUSE AND VALIDLY EXCERCISES LOCAL AUTHORITY

### A. No Conflict Preemption; *Ocean County* Controls

The Third Circuit has already rejected the core conflict-preemption theory pressed here. In *Ocean County*, plaintiffs argued that New Jersey's Directive obstructed the INA's "comprehensive framework." *Ocean County Board of Commissioners v. Grewal*, 8 F.4th 176, 180–81 (3d Cir. 2021). The Third Circuit disagreed, holding that federal statutes regulating federal officers cannot preempt state laws regulating state officers. That holding controls here.

4

The Government's reliance on *Arizona*, *Hines*, and *Davis* is misplaced. Those cases involved state laws regulating immigration or federal operations directly. Paterson's SOP does neither. It governs only how Paterson officers allocate their time and resources.  Nor does *United States v. Texas* support the Government. *United States v. Texas*, 599 U.S. 670 (2023). There, Texas issued an executive order prohibiting federal agents from transporting migrants, a direct interference with federal operations.

Paterson imposes no such restrictions. Federal agents may operate freely and independently in Paterson at all times, with or without municipal involvement. What is more, detainers remain voluntary. *See Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014). Nothing in the INA converts voluntary requests into compulsory municipal duties, as Plaintiff seeks to do here. Congress knew how to impose mandatory state participation when it wished to. It did not do so here.  Nothing in Paterson's polices run afoul of the INA.

### B. No Express Preemption Under §1373 or §1644

The United States effectively concedes that *Ocean County* requires dismissal of its express-preemption claim. In *Ocean County*, plaintiffs argued—just as the Government does here—that 8 U.S.C. §§ 1373(a) and 1644 prohibit New Jersey from limiting the communication of "immigration information" to federal officials. The Third Circuit rejected that theory outright, holding that §§ 1373 and 1644 "cannot serve as a basis for preemption" because they regulate state action, not private conduct, and therefore fail the *Murphy* predicate for preemption. 8 F.4th at 181–82. The Government's argument in this case is indistinguishable, and it does not meaningfully contend otherwise. If those provisions cannot preempt the State's Directive, they cannot preempt Paterson's SOP, which merely implements that Directive. Under binding Third Circuit law, the express-preemption theory ends there.

The Government's express-preemption theory (Pl.'s Opp. at 17–20) depends on an overbroad reading of 8 U.S.C. § 1373 that courts have repeatedly rejected. Section 1373 applies only to "information regarding … immigration status." 8 U.S.C. § 1373(a); see also *Ocean County Bd. of Comm'rs v. Att'y*

5

*Gen.,* 8 F.4th 176, 181–82 (3d Cir. 2021) (holding that custodial information such as release dates is not covered by § 1373).  Because Paterson does not collect immigration-status information, and does not restrict the voluntary sharing of such information, there is no basis for express preemption.

The Government invokes *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999), but that decision forecloses, rather than supports, its argument. *City of New York* upheld § 1373 only because the statute imposed no affirmative duties on municipalities and merely prevented them from prohibiting voluntary communication with federal immigration authorities. But *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) abrogated that distinction, which makes clear that there is no constitutional difference between imposing an affirmative duty on local government and preventing it from enacting contrary legislation. Thus, the rationale underlying *City of New York* cannot sustain the expansive reading of § 1373 the Government now seeks. The Government now asks this Court to use § 1373 to impose affirmative obligations on Paterson, precisely the kind of compulsory participation the Second Circuit expressly disclaimed.

The Government's reliance on *New York v. DOJ*, 951 F.3d 84 (2d Cir. 2020), is likewise misplaced. That case upheld § 1373 only as a federal-funding condition, under the Spending Clause, and explicitly declined to rule on whether § 1373 would be constitutional "outside [the] federal funding requirement." *Id.* at 114. Nothing in *New York v. DOJ* suggests that § 1373 carries preemptive force, and the decision has no relevance to the conflict- or express-preemption theories asserted here. Indeed, the Third Circuit has already held that § 1373 cannot preempt State or local law because it regulates state actors, not private individuals, which fails the predicate for preemption under *Murphy v. NCAA*, 584 U.S. 453, 476–78 (2018). *See Ocean County Bd. of Comm'rs v. Att'y Gen.*, 8 F.4th 176, 181–82 (3d Cir. 2021). The Government's attempt to repurpose *New York v. DOJ* as a preemption case (Pl.'s Opp. at 17–18) is therefore fundamentally incompatible with binding Third Circuit precedent.

6

Nor do *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018), or *Loughrin v. United States*, 573 U.S. 351 (2014), support the Government's theory. Those cases addressed the meaning of "regarding" in unrelated statutes governing bankruptcy representations (*Lamar*) and financial-institution fraud (*Loughrin*). They do not justify extending § 1373 to encompass release dates, residential addresses, booking information, or other custodial data. Courts interpreting § 1373, including *Ocean County* and the Philadelphia litigation challenging federal grant conditions, have uniformly held that custodial information does not constitute "immigration status" and falls outside the statute's scope. *See City of Phila. v. Sessions*, 309 F. Supp. 3d 289, 329–30 (E.D. Pa. 2018), *Ocean County*, 8 F.4th at 181–82.

The Government offers no authority to expand § 1373 beyond its contours as decided by binding precedent. Its express-preemption theory rests on a statutory gloss that the statute's text does not support, the case law affirmatively rejects, and binding Third Circuit precedent forecloses.

## C. The Tenth Amendment Confirms Paterson's Authority

The Government's theory fails for a more fundamental reason than mere statutory interpretation: it seeks a federal power to direct municipal officers that the Constitution prohibits. Paterson's SOP is a local directive governing how Paterson deploys its own employees, prioritizes municipal responsibilities, and manages public-safety resources. These are core powers of State sovereignty that federal agencies may not override and is guaranteed by the 10th amendment. The Supreme Court has repeatedly emphasized that the federal government cannot "require the States to govern according to Congress's instructions," nor conscript state or local personnel into carrying out federal programs. *Murphy v. NCAA*, 584 U.S. 453, 473-74 (2018); *Printz v. United States*, 521 U.S. 898, 935 (1997).

Here, the United States asks this Court to unlawfully invalidate Paterson's internal policies so that Paterson officers may be made available to perform federal civil-immigration tasks-such as facilitating ICE detainers, assisting administrative arrests, or providing information Congress has never required

7

municipalities to collect or disclose. But nothing in the INA authorizes the federal government to dictate how municipalities must assign personnel or whether they must provide affirmative assistance in civil immigration enforcement. Detainers remain voluntary requests. *See* 8 C.F.R. § 287.7(a); *Galarza v. Szalczyk*, 745 F.3d 634, 642-43 (3d Cir. 2014). To reinterpret the INA as imposing mandatory duties would be to graft onto the statute what Congress intentionally omitted.

The Government insists that the INA "regulates private parties" and therefore stands outside *Printz*. That argument misapprehends the anticommandeering doctrine. *Printz* itself dealt with a statute whose primary thrust was directed at private firearm purchasers; nonetheless, the narrow provision compelling local officers to carry out federal background checks violated the Tenth Amendment. What matters is not whether a statute at large regulates private conduct, but whether the specific federal rule at issue purports to dictate the operations of state or municipal officials. The United States' suit squarely aims at Paterson's internal governance of its own personnel, precisely the type of power it cannot exercise.

The Government's reliance on *Hodel v. Virginia Surface Mining*, 452 U.S. 264 (1981), reflects a similar misunderstanding. In *Hodel*, the Court upheld a statute that set standards for private mining operators while giving States the option to administer federal requirements if they wished. The critical feature was the federally preserved choice: a State could do nothing, and the federal government would enforce the program itself. *Id.* at 288. That structural feature federal enforcement proceeding without conscripting state resources, is precisely what the Government unlawfully seeks here. ICE remains fully capable of enforcing federal immigration law within Paterson without municipal assistance, just as Congress designed.

Courts construing federal immigration statutes consistently affirm that local participation is voluntary unless Congress expressly provides otherwise. In *Davila v. United States*, 247 F. Supp. 3d 650 (W.D. Pa. 2017), the court held that immigration detainers "do not and cannot impose a mandatory duty

8

on local law enforcement," confirming that federal regulations contemplate cooperation only "in the presence and direction of federal officials." *Id.* at 657-58. Paterson's SOP thus aligns with the legally recognized voluntary framework.

The broader federalism principles that mandate dismissal of this action are reinforced by cases such as *Bond v. United States* 564 U.S. 211 (2011), where the Supreme Court held that federalism constraints exist not solely to protect States, but to safeguard individuals from federal intrusion into areas of state governance, and, in *Reno v. Condon*, 528 U.S. 141 (2000) the Court upheld a federal statute only because it regulated the State as a market participant, not because the federal government may direct how a State allocates law-enforcement resources. Paterson's SOP concerns the latter: an allocation of sovereign functions, which federal law cannot commandeer. New Jersey courts evaluating the State's own ITD have validated this understanding. In *Cty. of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), the District Court held that limits on municipal cooperation in civil immigration enforcement are consistent with the INA, protected by the Tenth Amendment, and not preempted, a decision affirmed by the Third Circuit in *Ocean Cty. Bd. of Comm'is v. AG of N.J.*, 8 F.4th 176 (3d Cir. 2021). These rulings recognize that federal immigration statutes do not-and cannot compel local enforcement participation.

The Supreme Court's preemption cases point in the same direction. Although *Arizona v. United States*, 567 U.S. 387 (2012) invalidated state laws that attempted to create new immigration crimes or impose penalties on federal priorities, the Court expressly distinguished voluntary cooperation from impermissible state interference. Nothing in *Arizona* suggests that States or municipalities must cooperate. Indeed, the decision confirms that immigration enforcement is a federal function-meaning it must be carried out by federal officers, not commandeered local officials.

Taken together, these authorities confirm that the federal government cannot require Paterson to realign its local policies, reassign its officers, or devote resources to federal enforcement priorities. The

9

United States' preemption theory collapses because it would eliminate the voluntary cooperation model Congress created and impose a mandatory duty Congress rejected. Such a result is constitutionally barred. The Complaint should therefore be dismissed.

The INA's structure confirms this constitutional limit. Civil immigration enforcement is a federal responsibility, and Congress elected not to compel state or municipal participation. Voluntary cooperation is permitted; mandatory cooperation, as is suggested here is not. As the Ninth Circuit recognized, a State's decision not to participate "cannot be invalid [as an obstacle] where the State retains the right of refusal." *United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019). The Government's position would erase that right entirely, converting federal "requests" into enforceable mandates.

Because the United States seeks to force Paterson to adjust its law-enforcement priorities, reassign its officers, and commit municipal resources to federal ends, its theory is irreconcilable with the Tenth Amendment. The Constitution disables the federal government from achieving through preemption what it is forbidden to mandate directly. The Complaint must be dismissed.

**D. No Intergovernmental Immunity Violation**

The Government's intergovernmental-immunity argument fares no better. That doctrine bars state or local measures that either (1) regulate the federal government or its contractors, or (2) discriminate against them compared to similarly situated entities. Paterson's SOP does neither. The SOP governs only the duties of Paterson personnel. It neither restricts federal officers nor imposes any conditions on federal facilities, federal operations, or federal contractors. ICE retains unfettered authority to enforce federal law within Paterson-conduct investigations, execute warrants, and carry out civil immigration arrests-using its own agents and resources. The SOP simply determines what Paterson officers may or may not do on Paterson's time and Paterson's payroll. That is internal workforce management, not regulation of federal functions.

10

The discrimination theory likewise fails. Intergovernmental immunity requires showing that the federal government is treated less favorably than a similarly situated comparator. *Dawson v. Steager*, 586 U.S. 171, 177-78 2019). There is no such comparator here. Because Plaintiff has not established any actor similarly situated to federal civil-immigration authorities, Paterson cannot "discriminate" against the federal government in any meaningful sense. As the Seventh Circuit explained in rejecting an identical argument, a municipal policy defining what assistance local officers may provide "does not discriminate" when it simply sets the scope of local duties and leaves federal enforcement untouched. *McHenry Cnty. v. Raoul*, 44 F.4th 581, 594 n.7 (7th Cir. 2022).

Declining to assist is not discrimination. Local municipalities directing municipal resources is not regulation of the Federal Government or discrimination. Intergovernmental immunity does not obligate municipalities to grant special accommodations to federal agencies or to facilitate federal civil-immigration operations. It prohibits obstruction, not nonparticipation. Paterson's SOP does not impede federal enforcement. It merely clarifies that local officers will prioritize local law-enforcement responsibilities and comply with state law, including the Immigrant Trust Directive.

Any contrary rule would make voluntary cooperation impossible. As this Court observed when upholding the ITD, treating a municipality's refusal to participate as a form of discrimination "would mean participation in such efforts would no longer be voluntary," effectively compelling local officers into federal service, an outcome the Constitution forbids. *United States v. New Jersey*, 2021 U.S. Dist. LEXIS 13781, at 36-37 (D.N.J. Jan. 26, 2021).

Because Paterson's SOP neither regulates the federal government nor discriminates against it, the Government's intergovernmental-immunity theory cannot support the Complaint.

## CONCLUSION

For these reasons, and those stated above, the Court should dismiss the Complaint with prejudice.

Respectfully Submitted,
/s/ Aymen A. Aboushi, Esq.
Corporation Counsel City of Paterson

/s/ Owen T. Campbell, Esq.
Assistant Corporation Counsel

12